Amy POWELL, Respondent Below, Appellant,

v.

**DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES, Petitioner Below, Appellee.**

**No. 608, 2007.**

Supreme Court of Delaware.

Submitted: Dec. 10, 2008.
Decided: Dec. 22, 2008.
Corrected: Dec. 23, 2008.

---

14. *Claudio v. State,* 585 A.2d 1278, 1281 (Del. 1991).

James C. Reed, Esquire, Rehoboth Beach, Delaware, for appellant.

Kathryn L. Welch, Esquire, Department of Justice, Georgetown, Delaware, for Division of Family Services.

Heather Williams, Esquire, Office of the Child Advocate, Georgetown, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice:

The respondent-appellant, Amy Powell ("Powell"), appeals from the judgment of the Family Court terminating her parental rights under title 13, section 1103(a)(5) of the Delaware Code. Powell raises five arguments on appeal. First, she contends that the trial judge's finding that Powell failed to plan adequately for her children's needs was not supported by the evidence. Second, she contends that the trial judge's finding that termination of parental rights was in the best interests of the children was not supported by the evidence and that the trial judge erred as a matter of law in applying the best interests test. Third, she contends that the trial judge erred as a matter of law in relying on prior Family Court proceedings involving Powell that were not part of the record in this case and in which the children were not found to be dependent. Fourth, she contends that the trial judge erred as a matter of law by relying on evidence and

findings in the dependency case, which were subject to only a preponderance of the evidence standard of proof, and by failing to give counsel advance notice that the prior record would be used for that purpose. Fifth, she contends that the petitioner-appellee, the Department of Services for Children, Youth and their Families ("DSCYF"), a part of the Division of Family Services (hereinafter referred to collectively as "DFS"), failed to make reasonable efforts to reunify Powell with her children.

We have carefully reviewed the record and concluded that all of Powell's arguments are without merit. Therefore, the judgment of the Family Court must be affirmed.

### Facts

Amy Powell is the natural birth mother of C.F. and K.P., born September 7, 1999, and August 9, 2004, respectively.[1] R.F. is the father of C.F. The identity of K.P.'s father is unknown. Powell is married to Kelvin Powell.

DFS has a history with Powell and her family dating back to December 1999. DFS first obtained emergency custody of C.F. in January 2000, just four months after his birth, based on allegations of deplorable conditions in the home where he lived with Powell and his maternal grandparents. Following an adjudicatory hearing in March 2000, the Family Court found that C.F. was no longer dependent in his mother's care and C.F. was returned to Powell's custody.[2] DFS received emergency custody of both C.F. and K.P. in February 2005 based on similar allegations of deplorable home conditions. Following a preliminary protective hearing on March 10, 2005, however, DFS's petition was dismissed and the children were returned to Powell's custody.[3] On October 24, 2005, DFS petitioned for, and received, *ex parte* custody of Powell's children for a third time, again based on allegations of deplorable home conditions. C.F. and K.P. were placed together in a foster home. This third sequence of events eventually led to the termination of parental rights that is the subject of this appeal.

A preliminary protective hearing was held on November 3, 2005. Powell waived her right to a hearing based on her lack of appropriate housing and the Family Court found probable cause to retain the children in DFS custody.[4] On December 8, 2005, Powell waived her adjudicatory hearing on the basis that her children were dependent due to her lack of housing and lack of employment. Based upon evidence presented, the Family Court found both children to be dependent and awarded custody to DFS. The Family Court also determined that DFS had made reasonable efforts toward reunification with Powell.[5]

On January 19, 2006, the Family Court held a dispositional hearing during which

1. The Court assigned pseudonyms on appeal pursuant to Del.Supr. Ct. R. 7(d).

2. *Div. of Fam. Serv. v. A.O. & R.F.*, File No. CS00–03014, Pet. No. 00–05770 (Del.Fam.Ct. Apr. 26, 2000) (Order).

3. *Div. of Fam. Serv. v. A.P., R.F., J.W., & K.P.*, File Nos. CS00–03014, CS05–01243, CS05–01248, Pet. Nos. 05–005072, 05–05067, 05–05061 (Del.Fam.Ct. Mar. 10, 2005) (Order).

4. *In re C.F., K.P., & G.W.*, File Nos. CS00–03014, CS05–01243, CS05–01248, Pet. Nos. 05–34904, 05–34907, 05–34898 (Del.Fam. Ct. Nov. 3 2005) (Order). A third child, G.W., was also taken into DFS custody but his father was granted custody on February 23, 2006, and he is not subject to this appeal.

5. *In re C.F., K.P., & G.W.*, File Nos. CS00–03014, CS05–01243, CS05–01248, Pet. Nos. 05–34904, 05–34907, 05–34898, slip op. at 3 (Del.Fam.Ct. Dec. 8, 2005) (Order).

Powell was given a Family Service Plan ("case plan") developed by DFS with a goal of reunification. The plan included requirements for Powell to: obtain employment or other income to provide for the family's basic needs; demonstrate and develop effective parenting skills with a parent aide; remain involved in C.F.'s education and understand his special education needs; locate and maintain safe and stable housing and keep it clean and orderly; and visit with the children weekly.[6] Powell reviewed the plan with her counsel, agreed to its terms and signed it on January 19, 2006. The Family Court determined that it continued to be in the children's best interests to remain in DFS custody and that DFS was making reasonable efforts toward reunification.[7]

On March 9, 2006, the Family Court held a review hearing. Although Powell was visiting with the children weekly, pursuant to the case plan, she had not obtained appropriate or stable housing and was not employed. The Family Court again concluded that it continued to be in the children's best interests to remain in the care of DFS and that DFS was making reasonable efforts toward reunification.[8] At subsequent review hearings on May 11, 2006, and August 3, 2006, the Family Court noted that while Powell continued to attend weekly visits, work with the parent aide and remain gainfully employed, the primary barrier to reunification continued to be the lack of appropriate housing.[9] Specifically, at the August 3, 2006, hearing, the Family Court noted that Powell had separated from her husband and was again living with her parents, despite the fact that it was her parents' home from which the children had been removed several times before. Accordingly, the Family Court found that it was in the best interests of C.F. and K.P. to remain in DFS custody.

On December 14, 2006, the Family Court held a review hearing in which it also considered the maternal grandparents' petition for guardianship of C.F. and K.P.[10] By that time, the maternal grandparents had replaced their former mobile home with a newer one on the same lot. Powell's father testified that Powell wanted to live with them but he would not allow her to do so. He also stated that Kelvin Powell was not welcome in his home. Powell's father admitted that he had not seen either of the children since they entered care more than a year earlier. Powell supported her parents' petition for guardianship and stated that she was not capable of providing care for her children because she had no place to stay and no job.

At the time of the hearing, Powell was living half of the time with her parents and half of the time with her husband. She also was unemployed after a physical alter-

6. In re C.F., K.P., & G. W., File Nos. CS00–03014, CS05–01243, CS05–01248, Pet. Nos. 05–34904, 05–34907, 05–34898 (Del.Fam.Ct. Jan. 19, 2006) (Order).

7. Id. at 2.

8. Div. of Fam. Serv. v. A.P. & R.F., File No. CS00–03014, Pet. No. 34904 (Del.Fam.Ct. Mar. 9, 2006) (Order); Div. of Fam. Serv. v. A.P. & K.P., File No. CS05–01243, Pet. No. 05–34907 (Del.Fam.Ct. Mar. 9, 2006) (Order).

9. Div. of Fam. Serv. v. A.P., File No. CS05–01243, Pet. No. 05–34907 (Del.Fam.Ct. May 11, 2006) (Order); Div. of Fam. Serv. v. A.P. & R.F., File No. CS00–03014, Pet. No. 05–34904 (Del.Fam.Ct. May 11, 2006) (Order); Div. of Fam. Serv. v. A.P. & R.F., File Nos. CS00–03014, CS05–01243, Pet. Nos. 05–34904, 05–34907 (Del.Fam.Ct. Aug. 3, 2006) (Order).

10. In re C.F. & K.P., File Nos. CS00–03014, CS06–01014, CS05–01243, CS06–01013, Pet. Nos. 05–34904, 06–00201, 05–34907, 06–00200 (Del.Fam.Ct. Dec. 14, 2006) (Order).

cation with a colleague at her former job that resulted in criminal charges being filed against Powell. Ultimately, the trial judge denied the maternal grandparents' petition for guardianship based on the children having been removed from the grandparents' home on several occasions and because it was in the children's best interests to remain in DFS custody. The trial judge also determined that DFS was making reasonable efforts toward reunification.[11]

On January 25, 2007, the Family Court held a permanency hearing to consider DFS's request to change the goal from reunification to termination of parental rights.[12] At the time of the hearing, Powell was unemployed, was still living part-time with her parents and part-time with her husband and had failed to establish safe and appropriate housing for herself and the children. Powell also had become pregnant again and claimed that she was unable to find employment because of her pregnancy.[13]

The parent aide testified that Powell's lack of employment prevented her from being able to secure housing and that the aide was unsure as to where exactly Powell was living. Furthermore, the parent aide indicated that while Powell was aware of C.F.'s educational needs and psychological limitations, she was not receptive to that information. In addition, a DFS worker testified that Powell had failed to complete the required number of housing applications and that DFS opposed Powell living with her parents because of the extensive history of deplorable conditions in their home. Finally, Powell refused to accept responsibility for her children entering care and, in fact, blamed the State for her children remaining in the care of DFS.

The children's case worker testified that Powell had missed visits and medical appointments for the children because she did not have automobile insurance. Powell admitted she was experiencing hardships, including not having enough gas to travel to visits with her children. Powell also testified that she and her husband were going to rent a room from her parents and admitted that, if the children were returned to her at that point, their housing with her parents would only be temporary—until they could find housing on their own and until she and her husband became employed. Powell's husband also testified at this hearing that he and Powell planned to live with the maternal grandparents and pay them rent of $600 per month, despite the fact that the couple's only income was $117 per week that he received in unemployment income. Based on all of the foregoing evidence, the Family Court determined that, while DFS had made reasonable efforts toward reunification by providing the mother with services for finding housing, employment and learning parenting skills, Powell had been unable to obtain stable housing or employment. Accordingly, the Family Court ordered a hearing on the termination of parental rights.[14]

On September 6 and 7, 2007, the Family Court held a trial on the termination of

---

11. *Id.* at 3.

12. *Dep't of Serv. for Children, Youth & their Families v. A.P, R.F. & Unknown Father,* File Nos. CS00–03014, CS05–01243, Pet. Nos. 05–34904, 05–34907, slip op. at 1 (Del.Fam.Ct. Mar. 28, 2007) (Order).

13. *Id.* at 8.

14. *Id.* at 12.

parental rights.[15] Prior to trial, the Family Court explained that it intended to proceed by receiving evidence from the permanency hearing forward, but would not prohibit additional evidence from events prior to that permanency hearing. The Family Court further indicated it would take judicial notice of its prior orders, including the orders from 2000 and 2005 that are contested in this appeal.[16] The mother did not object to the Family Court's procedure and in response to a question by Powell's counsel's, the trial judge stated that he would consider all evidence contained in the prior orders using a clear and convincing evidence standard.

At the termination hearing, the parent aide supervisor testified that her agency had closed the mother's case because the mother had failed to cooperate with the parent aide and had failed to reach the goals that DFS had set for Powell. The DFS worker testified that since May 2007, she had made several unannounced visits to the maternal grandparents' home. Each time, she saw clean and dirty clothes in piles throughout the home, large furniture impeding walkways and "tons" of paperwork piled on the bed. The DFS worker indicated that she would have serious concerns about a child who was old enough to crawl or walk living in the home in its current condition. The worker also testified that both the interior and exterior of the home had deteriorated since the grandparents acquired the home.

By the time of the termination hearing, the maternal grandfather apparently had changed his mind about allowing Powell to live in his home. He testified that Powell and her husband were paying certain household bills instead of rent. He also admitted, however, that neither Powell nor her husband had secured steady employment. Powell testified that she did not intend to remain at her parents' house and was planning to rent a friend's house for $700 per month, even though she indicated that her and her husband's combined monthly income was only $350.

Powell testified that she had been employed part-time as a waitress for one month, but her car had been repossessed and her husband remained unemployed. She also confessed to numerous criminal charges, but said she could not remember all of her convictions. Powell admitted that C.F. is disabled, but claimed that she "didn't feel he had a developmental need." Finally, when asked how she intended to maintain a safe and appropriate home, Powell explained she would "live like a normal person. I'm not trying to kill myself by trying to make it the way the State wants it."

On October 22, 2007, the Family Court issued a final judgment terminating the parental rights of Powell, R.F. and K.P.'s unknown father.[17] This appeal followed.

### Standard of Review

When reviewing the Family Court's termination of parental rights, our standard and scope of review involves a review of the facts and law, as well as the inferences and deductions made by the trial court.[18] To the extent that the issues

15. *Dep't of Serv. for Children, Youth & their Families v. A.P, R.F. & Unknown Father (TPR Order)*, File Nos. 07–01–03TS, 07–01–04TS, Pet. Nos. 07–02744, 07–02768, slip op. at 2 (Del.Fam.Ct. Oct. 22, 2007) (Order).

16. *Id.*

17. *Id.* at 25.

18. *Solis v. Tea,* 468 A.2d 1276, 1279 (Del. 1983).

on appeal implicate rulings of law, we conduct a *de novo* review.[19] To the extent that the issues on appeal implicate rulings of fact, we conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly wrong.[20] This Court will not disturb inferences and deductions that are supported by the record and the product of an orderly and logical deductive process.[21] If the trial judge has correctly applied the pertinent law, our review is limited to abuse of discretion.[22]

In Delaware, the trial judge must conduct a two-step analysis when deciding whether to terminate parental rights.[23] First, the trial judge determines whether there is clear and convincing proof of at least one of the grounds for termination enumerated in title 13, section, 1103(a) of the Delaware Code.[24] Second, the trial judge must determine whether the decision is in the best interests of the child as that term is defined in title 13, section 722 of the Delaware Code.[25] Both steps must be established by clear and convincing evidence.[26]

## Failure to Plan

■ Powell argues that the evidence did not support the Family Court's finding that grounds existed for termination of her parental rights. The Family Court determined that Powell had failed to plan adequately for her children's needs under title 13, section 1103(a)(5). Powell contends that the Family Court erred in finding that the maternal grandparents' home was not suitable and appropriate for C.F. and K.P. She argues that housing and employment were the critical parts of the case plan and that the Family Court erroneously found that Powell failed to satisfy these elements when it determined that she failed to plan. Specifically, Powell asserts that the Family Court's finding of insufficient housing was based solely on the presence of "clutter" in the maternal grandparents' home and the court ignored that Powell was gainfully employed at the time of the termination hearing.

Under section 1103(a)(5), when the child is in the care of DFS, the Family Court must determine that (1) the parent is unable or has failed to plan adequately for the child's needs, health and development and (2) one or more of five conditions exist.[27] Here, the Family Court deter-

19. *In re Heller,* 669 A.2d 25, 29 (Del.1995) (citing *In re Stevens,* 652 A.2d 18, 23 (Del. 1995); *Black v. Gray,* 540 A.2d 431, 432 (Del. 1988)); *see also Newton v. Div. of Fam. Serv.,* 2006 WL 2852409, at *2 (Del.Supr.) (Order).

20. *In re Stevens,* 652 A.2d at 23; *see also Jarmon v. Dep't of Serv. for Children, Youth & Their Families,* 2006 WL 3113122, at *2 (Del. Supr.) (Order) (citing *Newton,* 2006 WL 2852409, at *2).

21. *In re Stevens,* 652 A.2d at 23; *Solis,* 468 A.2d at 1279; *see also Jarmon,* 2006 WL 3113122, at *2; *Newton,* 2006 WL 2852409 at *2.

22. *Solis,* 468 A.2d at 1279; *see also Parson v. Parson,* 2002 WL 442399, at *1 (Del.Supr.) (Order).

23. Del.Code Ann. tit. 13, § 1103(a) (2008); *Div. of Fam. Serv. v. Hutton,* 765 A.2d 1267, 1271 (Del.2001).

24. Del.Code Ann. tit. 13, §§ 1103(a)(1)-(8); *Hutton,* 765 A.2d at 1271. The basis for termination of parental rights that is relevant in this case is failure to plan under section 1103(a)(5), which provides in relevant part that "[t]he parent ... [is] not able, or [has] failed, to plan adequately for the child's physical needs or mental and emotional health and development" and one of five stated conditions has been met. Del.Code Ann. tit. 13, § 1103(a)(5).

25. Del.Code Ann. tit. 13, §§ 722(a)(1)-(8).

26. *In re Stevens,* 652 A.2d at 23.

27. *Hutton,* 765 A.2d at 1271. Section 1103(a)(5)(a) provides that when a child is in

mined that DFS had proven by clear and convincing evidence that Powell had failed to plan for C.F.'s and K.P.'s physical needs and mental and emotional health and development. Powell's case plan required several things in order to achieve the goal of reunification. Among these, Powell was asked to: secure safe and stable housing and keep it clean and orderly; obtain employment or other income to provide for the family's basic needs; demonstrate a good understating of child development; work with parent aide services; be involved with C.F.'s school and understand his special education needs; and visit weekly with her children.

Powell's primary issues, however, were housing and employment. The Family Court's finding that Powell failed to plan was not based solely on the existence of "clutter" in the grandparents' home but also on the fact that her housing situation was unstable.[28] The Family Court found that since C.F. and K.P. had entered DFS custody, Powell's housing varied greatly.[29] Aside from the conditions of the maternal grandparents' home and Powell's constant moving, the Family Court also found that, due to Powell's employment history, her plans to obtain a new home were speculative. The record indicates that since the children entered DFS care in October 2005, Powell was employed at Food Lion from April 2006 until October 2006, when she quit after "fussing with a co-worker and they called the cops." She did not work again until August 2007, when she began working part-time at a restaurant.

Thus, as of the termination hearing, Powell had been employed for only seven of the twenty-three months the children had been in DFS custody. This was sufficient to support the Family Court's finding that, despite the fact Powell was employed at the time of the termination hearing, she has not provided a regular source of income sufficient to provide for her family's basic needs. In addition, this is sufficient to support the Family Court's finding that Powell was unable to provide C.F. and K.P. with appropriate housing.

The Family Court's decision that Powell failed to plan was not limited to housing and employment issues. The Family Court also found that Powell's efforts to visit with the children had lessened in recent months. While Powell at one time regularly visited with the children, she had not visited them in the three moths prior to the termination of parental rights hearing. Accordingly, the factual findings of the trial judge that Powell failed to plan

DFS care, the Family Court must find one or more of the following conditions exist:

1. The child has been in the care of the Department or licensed agency for a period of one year, or for a period of six months in the case of a child who comes into care as an infant, or there is a history of previous placement or placements of this child; or
2. There is a history of neglect, abuse or lack of care of the child or other children by the respondent; or
3. The respondent is incapable of. discharging parental responsibilities due to extended or repeated incarceration, except that the Court may consider post-conviction conduct of the respondent; or
4. The respondent is not able or willing to assume promptly legal and physical custody of the child, and to pay for the child's support, in accordance with the respondent's financial means; or
5. Failure to terminate the relationship of parent and child will result in continued emotional instability or physical risk to the child .... [providing four factors the court must consider]. Del.Code Ann. tit. 13, §§ 1103(a)(5)(a)(1)-(5).

**28.** *TPR Order* at 17 (noting that the "clutter" consisted of piles of clothes more than two feet high, furniture impeding walkways and "tons" of paperwork piled on the beds).

**29.** *Id.* at 17–18.

adequately for the physical needs and mental and emotional health and development of the children was supported by the record and not clearly erroneous.

### Children's Best Interests

■ Powell argues that the evidence did not support the Family Court's finding that termination of her parental rights was in the best interests of the children. She also asserts that the Family Court erred as a matter of law when it applied the best interests test.

■ Under the best interests standard, there must be "clear and convincing evidence that termination of parental rights is essential to the child's welfare." [30] Title 13, section 722(a) of the Delaware Code governs the Family Court's best interests determination in a termination of parental rights proceeding [31] and provides factors that the court must consider in making its decision. [32] Powell contends that in considering these factors, the Family Court improperly relied on Powell's involuntary period of separation from her children fol-

lowing the *ex parte* order granting DFS custody and used it as the sole basis for holding that some factors weigh against reunification. Powell also contends that the record does not support the Family Court's conclusion that termination of parental rights is in the children's best interests. Powell's arguments are not supported by the record.

The first statutory factor to be considered is the wishes of the child's parents. [33] Although the Family Court considered Powell's wishes to be reunified with her children, Powell argues that this factor should have been given more weight. The Office of the Child Advocate, which represents the interests of C.F. and K.P., and the Division of Family Services, the custodian of C.F. and K.P., supported the termination of Powell's parental rights. When determining the best interests of a child, the interests of the child must prevail where they conflict with those of the parents. [34] The record reflects that the trial judge gave this factor proper weight.

**30.** *Hutton,* 765 A.2d at 1272 (quoting *In re Burns,* 519 A.2d 638, 643 (Del.1986)); *see also Jarmon,* 2006 WL 3113122, at *2.

**31.** *In re Hanks,* 553 A.2d 1171, 1179 (Del. 1989); *see also Jarmon,* 2006 WL 3113122, at *2.

**32.** Section § 722(a) provides that in determining the best interests of the child, the court shall consider all relevant factors, including:

  (1) The wishes of the child's parent or parents as to his or her custody and residential arrangements;
  (2) The wishes of the child as to his or her custodian(s) and residential arrangements;
  (3) The interaction and interrelationship of the child with his or her parents, grandparents, siblings, persons cohabiting in the relationship of husband and wife with a parent of the child, any other

residents of the household or persons who may significantly affect the child's best interests;
  (4) The child's adjustment to his or her home, school and community;
  (5) The mental and physical health of all individuals involved;
  (6) Past and present compliance by both parents with their rights and responsibilities to their child under § 701 of this title;
  (7) Evidence of domestic violence as provided for in Chapter 7A of this title; and
  (8) The criminal history of any party or any other resident of the household including whether the criminal history contains pleas of guilty or no contest or a conviction of a criminal offense. Del. Code Ann. tit. 13, §§ 722(a)(1)-(8).

**33.** Del.Code Ann. tit. 13, § 722(a)(1).

**34.** Del.Code Ann. tit. 13, § 1113; *In re Burns,* 519 A.2d 638, 644 (Del.1986).

The Family Court next considered the second factor, the child's wishes.[35] Although the trial judge spoke with C.F. and found him very talkative and friendly, the trial judge could not determine from the conversation C.F.'s wishes with respect to reunification. The trial judge also determined that three-year-old K.P. was too young to express an opinion.

Third, the trial judge considered C.F.'s and K.P.'s other significant relationships, including those with parents, grandparents or siblings.[36] Powell argues that the trial judge failed to consider C.F.'s and K.P.'s relationships with their stepfather and their maternal grandfather. The trial judge analyzed the children's relationships with: Powell, which it found to be positive; their foster parents, which it also found to be positive; and their respective fathers, which it found to be non-existent. The trial judge also discussed C.F.'s and K.P.'s relationship with their maternal grandfather, explaining that they were close at one point but have had no contact for almost two years. Although the trial judge made no express finding as to the children's relationship with Powell's husband Kelvin, he did mention that Powell's other family members also have had no contact with the children for two years, which did not suggest a positive relationship.

Powell argues that the trial judge improperly weighed against reunification the two-year period that she and the children spent apart while they were in DFS custody. To the extent the trial judge mentioned the two-year period, however, it was to explain that the limited contact Powell had with her children during the two-year period was a direct result of Powell's failure to complete her case plan. While the period of absence in itself may not weigh against reunification, Powell's own actions limiting her contact with her children are relevant.

The trial judge then considered C.F.'s and K.P.'s adjustment to home, school and community under the fourth factor.[37] The trial judge noted that C.F. is a special education student and generally doing well. The trial judge noted that both children have adapted well to foster care and made many advances in their new home. It is under this factor that Powell argues most strenuously that the trial judge improperly used against reunification the period of time she and the children spent apart. It does not appear that the trial judge used this period against Powell when he considered this factor.

Under the fifth factor, the trial judge considered the mental and physical health of all persons involved.[38] The trial judge noted that C.F. has certain learning difficulties, receives speech and occupational therapy, attends counseling sessions, and takes medication for hyperactivity. Powell argues that the trial judge failed to give weight to the fact that there was no evidence of mental or physical health issues with Powell or any of her relatives who would be active in childcare responsibilities. The trial judge expressly recognized, however, that no other participant in the proceedings has a significant mental or physical health issue.

Sixth, the trial judge considered the parents' past and present compliance with their rights and responsibilities to their child under title 13, section 701.[39] Section

---

**35.** Del.Code Ann. tit. 13, § 722(a)(2).

**36.** Del.Code Ann. tit. 13, § 722(a)(3).

**37.** Del.Code Ann. tit. 13, § 722(a)(4).

**38.** Del.Code Ann. tit. 13, § 722(a)(5).

**39.** Del.Code Ann. tit. 13, § 722(a)(6).

701 discusses the responsibilities that parents have for a child's support, care, nurture, welfare and education.[40] The trial judge stressed that Powell had failed in this regard because she was not able to provide consistent and safe housing for C.F. and K.P. The trial judge also found that Powell was not able to find a consistent source of income to support the children financially. Powell claims the trial judge's conclusion that this factor weighs strongly against reunification was based on his finding that Powell lost interest in working with the parent aide once Powell learned that DFS was recommending a permanent termination of parental rights. Powell argues that this is unfair because termination of parental rights is procedural once reunification efforts end. This finding appears to be less important than the trial judge's finding that Powell ceased visiting C.F. and K.P. in the three months preceding the permanency hearing.

Under the seventh factor, the trial judge considered whether there was any evidence of domestic violence.[41] Powell argues that the absence of domestic violence should weigh in favor of reunification. Because the parties did not present any evidence at trial regarding this factor, the trial judge appeared to deem it neutral.

Eighth, the trial judge weighed the criminal history of any party or member of the child's household.[42] The trial judge concluded that this factor weighed in favor of termination of parental rights because of Powell's criminal history, her husband's conviction of assault, the maternal grandfather's drug and weapons convictions, and R.F.'s lengthy criminal arrest and conviction record, including drug-related charges

and fourth-degree rape with a victim less than sixteen years of age. The trial judge found these criminal histories troubling and weighing against reunification, particularly because Powell had frequent contact with these people.

Powell argues that the Family Court should not have considered R.F.'s criminal record. The trial judge specifically noted that R.F.'s record was of "great concern" because Powell still maintained contact with him. It was not error for the trial judge to consider the criminal records of individuals who may play a role in the children's care.

■■■■ When balancing all of the relevant factors, the Family Court may give different weight to different factors.[43] "The amount of weight given to one factor or combination of factors will be different in any given proceeding. It is quite possible that the weight of one factor will counterbalance the combined weight of all other factors and be outcome determinative in some situations."[44]

In this case, while the Family Court did not determine, as it should have, whether each factor weighed for or against reunification or was neutral, the Family Court apparently concluded that factors six and eight pointed so strongly against reunification that they outweighed the other factors. The Family Court's conclusion that termination of parental rights is in C.F.'s and K.P.'s best interests is supported by the record and is the product of an orderly and logical deductive process.

### Prior Proceedings

■■■■ Powell contends that the Family Court erred as a matter of law in

**40.** Del.Code Ann. tit. 13, § 701.

**41.** Del.Code Ann. tit. 13, § 722(a)(7).

**42.** Del.Code Ann. tit. 13, § 722(a)(8).

**43.** *Snow v. Richards,* 2007 WL 3262149, at *3 (Del.Supr.) (citing *Fisher v. Fisher,* 691 A.2d 619, 623 (Del.1997)).

**44.** *Fisher,* 691 A.2d at 623.

relying on two orders from past dependency and neglect proceedings involving Powell and her children. The first was in early 2000 and the second in 2005. The trial judge notified all counsel of his intent to take judicial notice of the existing record and Powell never objected. When the appellant claims that the trial judge abused his or her discretion in admitting evidence, this Court first considers whether the specific rulings were correct.[45] If this Court determines that the trial judge abused his or her discretion, we will then consider whether the mistakes constituted significant prejudice and denied the appellant a fair trial.[46] When, however, arguments not fairly presented to the trial judge are presented for the first time on appeal, our standard of review is for plain error.[47]

Delaware Uniform Rule of Evidence 202(d)(1)(B) provides that "[j]udicial notice may be taken, without request by a party, of . . . records of the court in which the action is pending and of any other court of this State . . ."[48] The Family Court, without objection, took judicial notice of the past dependency and neglect proceedings involving Powell and her children. In each of the proceedings, the trial judge made individual findings of fact. The trial judge, therefore, took judicial notice of those findings and considered them under the "clear and convincing" evidentiary standard.

The Family Court did not rely on the evidence pre-dating the current litigation. The trial judge reviewed and referenced Powell's history in the Family Court because the trial judge is statutorily required to do so. Title 13, section 1103(a)(5)(a)(5)(A) requires the trial judge to consider and evaluate "[w]hether the conditions that led to the child's placement, or similar conditions of a harmful nature, continue to exist, and there appears to be little likelihood that these conditions will be remedied at an earlier date. . . ."[49] Title 13, section 722(a)(6) requires the trial judge to consider as one of the best interests factors a parent's past compliance with her rights and responsibilities to the child.[50]

Therefore, the trial judge did not rely on these prior cases to find a course of conduct that indicates a continuing problem as to the suitability of the maternal grandparents' home. Instead, the trial judge properly discharged his statutory duty to evaluate the history of the case before the court. Accordingly, it was not plain error for the trial judge to recognize the case's extensive history, consider that history and recognize the quantum of evidence presented during the termination proceedings.

### *Dependency Case Evidence*

Powell contends that the Family Court erred as a matter of law by adopting evidence from the dependency case that was subject to a preponderance of the evidence standard of proof when the termination of parental rights decision requires proof by clear and convincing evidence. Powell did not object to the court's procedure at trial. Now she argues that the trial judge should not have reconsidered the evidence from the dependency hearing, applied a higher evidentiary standard and concluded that

---

**45.** *Potter v. Blackburn,* 850 A.2d 294, 297 (Del.2004) (citing *Barriocanal v. Gibbs,* 697 A.2d 1169, 1171 (Del.1997)).

**46.** *Id.*

**47.** *Id.*

**48.** Del. R. Evid. 202(d)(1)(B).

**49.** Del.Code Ann. tit. 13, § 1103(a)(5)(a)(5)(A).

**50.** Del.Code Ann. tit. 13, § 722(a)(6).

all of the earlier evidence met that higher standard.

In several prior opinions, we have recognized "the continuum that begins with a dependency and neglect hearing and frequently evolves into and ends with a termination proceeding." [51] We have also observed that "[w]hen a termination proceeding is commenced, the factual basis for terminating parental rights is found in the conduct that occurred from the time that child was placed in foster care until the State concluded that the efforts at reunification had failed." [52] This Court has never directly addressed this issue but other jurisdictions, recognizing the continuum of proceedings, have found that there is no error in using evidence presented during the dependency and neglect proceedings to support a finding by clear and convincing evidence that parental rights should be terminated.[53]

■■■ We now hold that during a termination hearing, the Family Court may review or consider the record of previous relevant proceedings, even though they may have generated decisions based upon a preponderance of the evidence, provided the Family Court reconsiders the evidence under the higher clear and convincing standard. In this case, the record reflects the Family Court complied with that rule. Therefore, there was no error.

### Reasonable Efforts

■■■ Finally, Powell argues that the Family Court did not use the clear and convincing standard to find that DFS made reasonable efforts to reunify the family. Specifically, Powell argues that, although housing and employment were the primary issues in the case, DFS applied relatively few resources and little effort to correct these obstacles to reunification. When seeking termination of parental rights based on a failure to plan, DFS must prove that it "made bona fide, reasonable efforts to reunite the family." [54] This requirement is based on federal and state law. The State's receipt of federal funding for child welfare services depends

---

51. *Hughes v. Div. of Fam. Serv.*, 836 A.2d 498, 507 (Del.2003); *Brown v. Div. of Fam. Serv.*, 803 A.2d 948, 951 (Del.2002); *Watson v. Div. of Fam. Serv.*, 813 A.2d 1101, 1106 (Del. 2002).

52. *Watson*, 813 A.2d at 1106.

53. *In re K.S. & A.S.*, 652 N.W.2d 341, 346 (N.D.2002) ("[W]hen the termination hearing is a culmination of prior proceedings, the court need not operate in a vacuum as to the results of those proceedings."); *Bearden v. Ark. Dep't of Human Serv.*, 344 Ark. 317, 42 S.W.3d 397 (Ark.2001) ("[T]he proceedings and orders pertaining to a termination-of-parental-rights case are a continuation of the dependency-neglect case and the evidence adduced at the dependency-neglect proceedings may be considered by the court during termination proceedings."); *In re Charles G.*, 763 A.2d 1163, 1165 (Me.2001) ("The fact that a further hearing and a higher burden of proof must be met to terminate parental rights does

not necessitate that the testimony presented at the reunification hearing be repeated at the termination hearing."); *In re J.M.C.*, 741 A.2d 418, 424 (D.C.1999) ("[W]here the interested parent was a party to and represented by counsel in the prior neglect proceeding, the trial court may consider and supplement related and relevant facts previously found in the neglect proceeding, provided that the trial court's decision terminating parental rights is based on clear and convincing evidence."); *In re Michaela C.*, 3 Cal.Rptr.2d 869, 878 (Cal.App., 1 Dist.1992) (noting that in a termination hearing, a trial judge will "necessarily revisit many of the same facts already established at prior hearings in juvenile cases" and "may review or consider the record of previous relevant proceedings, even though [they] may have generated a prior order based upon a preponderance of the evidence").

54. *Newton v. Div. of Fam. Serv.*, 2006 WL 2852409 (Del.2006) (citing *In re Hanks*, 553 A.2d 1171, 1179 (Del.1989)).

**738**

on whether the State can show "that for each child as to whom foster care expenditures have been made, there has been a judicial determination that all reasonable efforts were extended (1) to prevent the necessity of removing the child from his or her natural parents, or (2) to unify the parents and child."[55] Federal law provides that "reasonable efforts shall be made to preserve and reunify families ... to make it possible for a child to safely return to the child's home."[56] Delaware law requires DFS to provide reunification services to families and to prepare written case plans and review those plans semi-annually.[57]

In this case, the trial judge determined at each and every hearing that DFS had made reasonable efforts toward reunification. At no time did Powell ever claim that DFS's efforts were inadequate or request a no reasonable efforts finding. All service providers testified in detail about how they had tried to help Powell resolve her housing and employment issues. The DFS worker testified she had offered Powell assistance in completing housing applications, but Powell refused her assistance. Even Powell admitted that the parent aide helped her search for housing and develop her parenting skills. Powell's failure to achieve housing and employment does not indicate that DFS did not make reasonable efforts.

In its written opinion, the Family Court states several times that a termination of parental rights decision must be made by clear and convincing evidence. The trial judge then makes several individual findings of fact, applies the evidence to the relevant statutes, and reaches its conclusions. The trial judge specifically states that he is "satisfied that the services pro-

vided to Mother ... were appropriate and adequate." Although this particular paragraph in the opinion does not include the phrase "clear and convincing evidence," it is apparent from the opinion in its totality that the court made its findings on the issue of reunification under the clear and convincing evidence standard.

### Conclusion

For all of the reasons set forth in this opinion, the judgment of the Family Court is affirmed.

---

**55.** 42 U.S.C. § 672(a); *In re Burns,* 519 A.2d at 647.

**56.** 42 U.S.C. § 671(a)(15)(B)(ii).

**57.** Del.Code Ann. tit. 29, §§ 9003(3)-(5).