IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ADRIENNE ZABEL,[1] | § | |
| | § | No. 130, 2023 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. 21-10-02TN |
| DEPARTMENT OF SERVICES FOR | § | Petition No. 21-23292 |
| CHILDREN, YOUTH AND THEIR | § | |
| FAMILIES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: August 23, 2023
Decided: October 17, 2023

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

## <u>ORDER</u>

Upon consideration of the appellant's brief filed under Supreme Court Rule 26.1(c), her attorney's motion to withdraw, the response of the Department of Services for Children, Youth and their Families ("DFS"), and the response of the Office of the Child Advocate ("OCA"), it appears to the Court that:

(1)   The respondent below-appellant, Adrienne Zabel ("the Mother"), appeals the Family Court's order, dated March 23, 2023, terminating her parental rights to her children Valerie (born in 2014), Albert (born in 2016), Nicole (born in

---

[1] The Court previously assigned a pseudonym to the appellant and uses pseudonyms to refer to the appellant's children in this order under Supreme Court Rule 7(d).

2017), and Keith (born in 2018) ("the Children"). The Family Court's order also terminated the parental rights of the Children's father ("the Father"), who filed a separate appeal.[2] In this appeal, we focus on the facts in the record as they relate to the Mother's appeal.

(2) On August 6, 2020, the Family Court granted DFS's emergency petition for custody of the Children by *ex parte* order. The Family Court found that there were emergency conditions sufficient to find probable cause that the Children were in actual danger or that there was a substantial risk of danger because three-year-old Nicole was recently diagnosed with chlamydia and genital herpes and the Children were medically neglected and developmentally delayed. The Family Court scheduled a preliminary protective hearing and appointed counsel to represent the Mother.

(3) At the preliminary protective hearing on August 12, 2020, a DFS investigator testified that Nicole was originally taken to the emergency room for a fever and rash in late July. She was discharged, but returned the next day with stomach issues and a continuing fever. Nicole tested positive for chlamydia and genital herpes, which likely resulted from sexual contact. The New Castle County Police began investigating possible sexual abuse of Nicole. The Children's

---

[2] *See Allen v. Div. of Servs. for Children, Youth and their Families*, No. 132, 2023 (Del.).

Advocacy Center tried to interview Valerie and Albert, but their developmental delays made this impossible.

(4) In addition to the parents, who denied having sexual contact with Nicole, the Children had been in the care of maternal relatives. DFS was unwilling to place the Children with maternal relatives who were possible suspects in the criminal investigation. The Children were originally placed with a paternal relative, but she could not care for the Children in addition to her own children. The Children were currently in two foster homes located next to one another. At the conclusion of the hearing, the Family Court found probable cause to believe that the Children were in physical, mental, or emotional danger and dependent based on the lack of sufficient explanation for Nicole having chlamydia and herpes and the Children appearing to be neglected as far as hygiene, medical care, and possibly education. The Family Court also found that it was in the best interests of the Children to be in DFS custody, that DFS had made reasonable efforts to prevent the unnecessary removal of the Children from their home, and that DFS had made reasonable efforts to place the Children in the same home. The Family Court subsequently appointed OCA counsel to represent the Children.

(5) At the September 24, 2020 adjudicatory hearing, the Mother, unlike the Father, did not stipulate to the Children's dependency. The doctor who treated Nicole testified that this was likely Nicole's first exposure to herpes and that the

incubation period for herpes was two to twenty days. The parents had reported that Mother was diagnosed with chlamydia while pregnant with Keith, but the doctor testified that it was unlikely Nicole would have acquired chlamydia or herpes from her birth. The doctor opined that it was most likely that Nicole contracted chlamydia and herpes as a result of sexual abuse. The other children did not test positive for sexually transmitted diseases.

(6)     A DFS employee testified that all of the Children were behind on their medical care, suffered developmental delays, were going to be evaluated, and should receive some type of therapy. She also testified that the parents were not fully cooperative in providing information about how Nicole could have contracted herpes and chlamydia.

(7)     The Mother testified that she did not know how Nicole contracted herpes or chlamydia. She also testified that the Children had received some therapeutic services and only one of them was behind on medical appointments. The Mother was not presently working. The Family Court found that the Children were dependent and should remain in DFS custody. The Family Court also found that DFS had made reasonable efforts to place the Children with relatives.

(8)     At the November 2, 2020 dispositional hearing, DFS submitted a case plan for the Mother. The case plan required the Mother to complete a mental health evaluation, follow any treatment recommendations, resolve all legal issues, obtain

and maintain employment, work with a family interventionist, complete a parenting class, identify and utilize a social support system, and participate in marriage counseling. The Mother had enrolled in a parenting class and was trying to schedule a mental health evaluation. The parents were living together, but not speaking because the Father had been having a sexual relationship with the maternal grandmother. There was testimony that the Children had been brought up to date on their shots and other medical needs. The Family Court found that the Children remained dependent and should remain in DFS custody. The Family Court also found that DFS was making reasonable efforts to reunify the Children with their parents.

(9) At the January 26, 2021 review hearing, a DFS employee testified that the Mother was doing well with her case plan. She had obtained full-time employment, completed a parenting class, and was working with her family interventionist on housing and budgeting. She had also undergone a mental health evaluation. Albert and Nicole were receiving speech therapy, physical therapy, and occupational therapy. Keith was receiving physical therapy, occupational therapy, and assistance with anxiety and social relationships. The Family Court found that the Mother's progress on her case plan was satisfactory. The Family Court also found that the Children remained dependent and should remain in DFS custody.

5

(10) The Family Court held a second review hearing on May 18, 2021. The Mother was having weekly visitation with the Children, who were now residing in the same foster home. The Mother had undergone a mental and cognitive health evaluation and did not meet the criteria for diagnosis. The evaluator testified that the Mother was overwhelmed and had not processed everything that had happened to her family. She was enrolled in individual therapy and wanted to work on herself before she pursued marital counseling. She had also maintained her employment. The Children continued to receive therapy for their developmental delays. The criminal investigation concerning Nicole had been closed; it remained unknown how she contracted chlamydia or herpes. The Family Court found that both parents had made progress on their case plans, but noted that they needed to find appropriate housing as their current residence was too small for four children. The Family Court also found that the Children remained dependent and should remain in DFS custody. The Family Court directed DFS to submit a paper review in lieu of another review hearing as a permanency hearing would soon be needed.

(11) In the paper review, DFS reported that the Mother was employed, receiving counseling, and was having supervised visitation with the Children twice a week. She had not begun marital counseling. DFS had substantiated both parents for sexual abuse of Nicole. The Children remained in the same foster home and

6

were up to date on their medical treatment. The Family Court adopted the paper review and scheduled a hearing for September 10, 2021.

(12) On August 18, 2021, DFS filed a motion to change the permanency plan from reunification to concurrent goals of reunification and termination of parental rights. The parents filed responses opposing the motion. OCA supported the motion.

(13) On September 10, 2021, the Family Court held a permanency hearing. The parents were residing together and looking for housing. They did not object to concurrent goals of reunification and termination of parental rights. Nicole and Albert had tested positive for genetic abnormalities that cause significant developmental delays and increased risk of mental health issues. The Family Court found that both parents had made progress on their case plans, but expressed concern for how Nicole had contracted sexually transmitted diseases and the parents' unwillingness or inability to explain how this had occurred. The Family Court granted DFS's motion to change the permanency plan to concurrent goals of reunification and termination of parental rights. DFS filed a petition for termination of parental rights on October 7, 2021, but subsequently pursued trial reunification as the parents had made progress on their case plans.

(14) On January 11, May 2, October 17, and November 3, 2022, the Family Court held post-permanency review hearings. The resulting orders reflect that the

parents continued making progress on their case plans and DFS returned the Children to the parents for trial reunification on August 4, 2022. The Mother gave birth to a fifth child on August 5, 2022. DFS had suspected the Mother was pregnant, but she denied it and produced a negative pregnancy test. The Mother's counselor had discharged her for dishonesty.

(15) In late September, Albert's teacher told DFS that Albert was coming to school unclean, sleeping in class, and misbehaving. Nicole's teacher also reported that Nicole was misbehaving. During an unannounced visit to the family in November, a DFS employee observed that the house was very unclean with a smell of urine throughout. DFS also expressed concerns about a lack of food, a full-size pillow in the new baby's crib that raised concerns as to how the baby was safely sleeping, and Valerie, Albert, and Nicole not wearing their prescribed glasses. The Family Court found that the parents had made little progress on their case plans and that the Children should remain in DFS custody. The Family Court scheduled a post-permanency review hearing and termination of parental rights hearing for February 23rd and 24th. On November 7, 2022, DFS removed the Children from the parents' home and returned them to foster homes.[3]

---

[3] DFS also obtained custody of the new baby.

(16) On February 23 and 24, 2023, the Family Court held a post-permanency hearing and a termination of parental rights hearing. The Family Court heard testimony from the Father, the Mother, two DFS employees, Nicole's kindergarten and special education teacher, and the Mother's family interventionist. The testimony reflected that the Mother had completed mental health and psychosexual evaluations. She received counseling between May 2021 and August 2022 when her therapist discharged her for being dishonest about her pregnancy. She began seeing another counselor a few months later. The Mother lied about being pregnant because she was worried DFS would take the new baby. The Father and the Mother had obtained appropriate housing, but it was in an unacceptable condition when DFS conducted an unannounced visit in November 2022.

(17) The Mother testified that she and the Father had retained a cleaning service and found a nanny after DFS removed the Children from the home in November. A DFS employee testified that the condition of the home was rectified after the Children's removal. The Mother identified her father and one of the Children's foster parents as part of her support network. She also claimed, for the first time, to receive $5,000 a month from the Father's landscaping business in addition to her income from working at Amazon. She admitted that she had never told DFS about this income despite requests from DFS for proof of income. According to the Mother's family interventionist, the condition of the home became

9

progressively worse during the trial reunification. There was also testimony that the Father had a child with another woman in 2022 and might be seeking custody of that child.

(18) The Children were in two different foster homes and continued to receive a variety of services and therapies for their developmental delays. The Mother testified about the types of therapy the Children had received and were receiving. Nicole had suffered several herpes outbreaks, including one during trial reunification when her parents did not seek treatment and instead sent her to school. Nicole's teacher testified that at the beginning of the school year when Nicole was living with her parents she would come into school very fatigued and rarely speak until after lunch. In November when Nicole was no longer living with her parents, she was less tired and more engaged in class and with her classmates. She also started coming to school with her glasses.

(19) On March 23, 2023, the Family Court issued a written decision terminating the parental rights of the Mother. The Family Court found that DFS had established by clear and convincing evidence that the Mother had failed to plan adequately for the Children's needs under 13 *Del. C.* § 1103(a)(5) and the Children had been in the care of DFS for more than a year. The Family Court recognized that the Mother had completed some elements of her case plan, but found that she did not finish her therapy, did not complete marriage counseling with the Father, failed

10

to provide credible testimony and evidence concerning the sufficiency of her income, failed to identify a sufficient social support system, and had failed to maintain her home in a safe and appropriate condition for the Children. The Family Court also found, by clear and convincing evidence, that DFS had made reasonable efforts to reunify the family. Applying the best-interest factors under 13 *Del. C.* § 722, the Family Court found that factors 1 (wishes of the parent), 7 (evidence of domestic violence) and 8 (criminal history) supported denial of the petition and factors 2 (wishes of the children),[4] 3 (the interaction and relationship of the children with family members), 4 (the children's adjustment to home, school, and the community), 5 (the mental and physical health of all individuals involved), and 6 (past and present compliance of the parent with the rights and responsibilities to their children under 13 *Del. C.* § 701). The Family Court concluded that DFS had established, by clear and convincing evidence, that termination of the Mother's parental rights was in the Children's best interests. This appeal followed.

(20) The Mother's counsel ("Counsel") filed a brief and motion to withdraw under Supreme Court Rule 26.1(c). Counsel represents that she has made a conscientious review of the record and the law and found no meritorious argument in support of the appeal. Counsel informed the Mother of the provisions of Rule

---

[4] In light of the youth and developmental delays of the Children, the Family Court relied on OCA's support for the petition to find that this factor supported granting the petition.

11

26.1(c) and provided her with a copy of the motion to withdraw and the accompanying brief. Counsel also informed the Mother of her right to submit any points she wished this Court to consider. The Mother has submitted several points for this Court's consideration. DFS and OCA ask this Court to affirm the Family Court's termination of parental rights.

(21) The Mother's points on appeal may be summarized as follows: (i) Valerie, Albert, and Nicole attended school while in their parents' care; (ii) the Children received therapy at school with Nicole and Albert also receiving therapy at home; and (iii) when DFS came to the house in November 2022, she had just come back from the grocery store and showed DFS that they had food and baby formula.

(22) This Court's review of the Family Court's decision to terminate parental rights entails consideration of the facts and law as well as the inferences and deductions made by the Family Court.[5] To the extent that the Family Court's rulings of law are implicated, our review is *de novo*.[6] The statute governing the termination of parental rights requires a two-step analysis.[7] First, the Family Court must determine whether the evidence presented meets one of the statutory grounds for termination.[8] Second, the Family Court must determine whether termination of

---

[5] *Wilson v. Div. of Fam. Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[6] *Id.*
[7] 13 *Del. C.* § 1103; *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[8] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731-32 (Del. 2008).

12

parental rights is in the best interests of the child.[9]  Both of these requirements must be established by clear and convincing evidence.[10]

(23)   We construe the Mother's points as arguing that the Family Court erred in finding that she failed to plan adequately for the Children's needs and that termination of her parental rights was in the Children's best interests.  Having considered the parties' positions and the record on appeal, we conclude that the Mother's appeal is wholly without merit. There is ample evidence supporting the Family Court's termination of the Mother's parental rights based on her failure to plan and that such termination is clearly in the Children's best interests.  This evidence included the Mother's unwillingness or inability to explain how her three-year old child contracted chlamydia and herpes, most likely as a result of sexual abuse, while in her care, failing to seek treatment for this child when she was suffering an outbreak and instead sending her to school, and failing to maintain a safe home for the Children and meet their needs during trial reunification.  We find no error in the Family Court's application of the law to the facts and no abuse of discretion in the Family Court's factual findings.

---

[9] 13 *Del. C.* § 1103(a) (providing that parental rights may be terminated if one of several statutory grounds is established and "it appears to be in the child's best interest"); *id.* § 722 (setting forth factors that the court may consider when determining the best interests of a child).
[10] *Powell*, 963 A.2d at 731.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family

Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice