IN THE SUPREME COURT OF THE STATE OF DELAWARE

THOMAS ROLLINS[1], §
§ No. 280, 2025
Respondent Below, Appellant, §
§ Court Below–the Family Court
v. § of the State of Delaware
§
DEPARTMENT OF SERVICES § File Nos. 24-04-01TN
FOR CHILDREN, YOUTH, AND § CN12-03528
THEIR FAMILIES, §
§ Petition Nos. 24-07645
Petitioner Below, Appellee. § 23-04196
§

Submitted: January 28, 2026
Decided: February 27, 2026

Before **VALIHURA**, **LEGROW**, and **GRIFFITHS**, Justices.

## **ORDER**

After careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     Thomas Rollins ("Father") appeals from a Family Court order denying his motion for visitation with his two minor children (the "Visitation Order"), and a later order terminating his parental rights (the "TPR Order"). For the reasons that follow, we affirm the Family Court's judgment.

---

[1] The Court previously assigned a pseudonym to Appellant under Supreme Court Rule 7(d).

(2)     On March 2, 2023, the Department of Services for Children, Youth, and Their Families ("DSCYF") received a report that Father was physically abusing his two children – J.L. and J.R.[2]  Four days later, the Family Court granted an *ex parte* emergency order to remove the children from Father's custody.[3]

(3)     On May 31, 2023, the Family Court held a dispositional hearing.  After the hearing, the court issued an order establishing a case plan for Father to complete to regain custody of the children.[4]  The case plan consisted of six elements: (1) Mental & Behavioral Health; (2) Financial & Resource Management; (3) Relationship & Community Support; (4) Behavioral Issues; (5) Physical Health of Children; and (6) Family Functioning.[5]

(4)     The first, third, and fourth elements are relevant to this appeal.  The first element – Mental & Behavioral Health – required that Father complete a "mental health assessment" and that he "comply with any mental health recommendations[.]"  The third element – Relationship & Community Support – required that Father "demonstrate acts of protection for his children by ensuring that their safety and well-being are not at risk when they are cared for by others."  And the fourth element

---

[2] A19 (After Hours DFS Emergency Request for Custody).

[3] A21–23 (Ex Parte Custody Order on Division of Family Services Filings dated Mar. 6, 2023).

[4] A33–39 (Dispositional Hr'g Order dated May 31, 2023).

[5] A36–37 (Dispositional Hr'g Order at 4–5).

– Behavioral Issues – required that Father complete a domestic violence perpetrator course, an anger-management assessment, and "follow [all] recommendations."[6]

(5)     Shortly after Father began working on his case plan, he was charged with criminal offenses related to child abuse.[7]  As a result, a no-contact order was entered against Father, prohibiting him from visitation with the children.[8]  Father's criminal trial took place on September 10, 2024.  His eldest child – J.L. – testified for the State.[9]  A jury found Father not guilty, and the no-contact order was lifted.[10]

(6)     Following his acquittal, Father filed a motion for visitation with the Family Court.[11]  The court conducted a two-day hearing and determined that visitation with Father was against the children's best interests and denied the motion.[12]

(7)     DSCYF filed a petition to terminate Father's parental rights in the children on the ground of "failure to plan."[13]  The court held a two-day hearing.  The

---

[6] *Id.*; A597 (Feb. TPR Tr. 53:1–6).

[7] *Order* at 10.

[8] A745–46 (Feb. TPR Tr. 201:20–202:4).

[9] A1065 (TPR Hr'g Tr. dated May 2, 2025, at 190:9–19 [hereinafter "May TPR Tr."]).

[10] *Order* at 10.

[11] Opening Br., Ex. 1 at 1 (Visitation Order dated Feb. 24, 2025).

[12] *Id.* at 21–22.

[13] The record is unclear regarding the date the TPR petition was filed.  The TPR Order suggests that a petition was filed by DSCYF on April 3, 2024 (*Order* at 7); but the filing is not reflected on the Family Court Docket (*see generally* A6 (Fam. Ct. Dkt. listing filings from Feb. 20, 2024 to

first hearing on February 27, 2025, and the final hearing on May 2, 2025 (the "TPR hearing").[14] During the TPR hearing, the Family Court heard testimony about Father's compliance with his case plan.

(8) Regarding the first case plan element (Mental & Behavioral Health), DSCYF workers testified that they had not received any records from Father's therapist to prove that he had completed an assessment or followed the recommendations in his case plan.[15] Father contended that he had complied with the requirements and consented to the release of his records, but DSCYF had failed to obtain his file from the therapist.[16] In the end, no documentation regarding this element was entered into evidence, but the court did not find negatively against Father on this first element.[17]

(9) Regarding the third case plan element (Relationship & Community Support), DSCYF workers testified that Father rarely initiated contact with his children's caregivers to inquire about their general needs.[18] On one occasion, Father

---

May 31, 2024)). Nevertheless, as neither Father nor DSCYF objects to the date of filing (*see* Opening Br. 1; DSCYF's Answering Br. 3), we will assume that the date is accurate.

[14] *Order* at 2.

[15] A595 (Feb. TPR Tr. 51:6–21).

[16] *Id.* at 86:9–89:18.

[17] *Order* at 16–17, 22 (noting the lack of documentation but not finding that Father failed this element of the case plan).

[18] *See e.g.*, A728 (Feb. TPR Tr. 184:6–24 (witness stating that "neither of [the parents] have ever asked me how [the children] are doing in school." "[N]either of [the parents] have asked for update[s] on medical appointments.")).

was invited to attend an Individualized Education Program conference for J.R., but did not show up.[19] The Family Court concluded that "[f]or the Relationships & Community Supports element Father was required to ensure Children's safety when cared for by others. The record from the TPR Hearings [was] void as to any progress made towards this element."[20] The court found that Father failed this element of his case plan.[21]

(10) Regarding the fourth case plan element (Behavioral Issues), DSCYF acknowledged that Father had completed a domestic violence perpetrator course and entered Father's certificate of completion into evidence.[22] However, even though Father had completed the course, DSCYF maintained that he had not changed and continued to deny that he had physically abused the children.[23] The instructor of the course had given Father a low grade on his "attitude towards [his] victim[s]."[24] Notably, a DSCYF worker testified that when she attempted to speak with Father about J.L., Father responded by calling J.L. a "fat [a**]."[25] And on another occasion, Father exclaimed that "it [was] either [his] way or the highway" should J.L. return

---

[19] A728 (Feb. TPR Tr. 184:14–22).

[20] *Order* at 18.

[21] *Id.* at 22.

[22] A598–60 (Feb. TPR Tr. 54:16–56:10).

[23] A603–04 (Feb. TPR Tr. 59:15–60:21).

[24] A685–86 (Feb. TPR Tr. 141:9–142:14).

[25] A602–03 (Feb. TPR Tr. 58:24–59:3).

home.[26]  In response, Father testified that he had come to realize that his actions might have caused his children trauma.[27]  When asked why he still denied abusing the children on a questionnaire, Father stated that he had marked it incorrectly.[28]  The court ultimately found that Father failed to comply with the Behavioral Issues element, stating:

> While Father exhibited some changes in his ability to take accountability when he testified on May 2, 2025, the record reflects Father described the action requiring Children being taken into DSCYF/DFS custody a "misunderstanding with the state" which calls into question whether Father is truly willing to take full accountability[.]
>
> The [c]ourt has consistently held throughout this case that Children's disclosures have been credible and that the [c]ourt believes Children were physically abused . . . . The [c]ourt now finds that Father cannot have completed this element of his Case Plan without first acknowledging and accepting full responsibility for the domestic violence and physical abuse.  Moreover, the [c]ourt finds that Father cannot protect Children from the issues that led to Children being removed from his care if he, after over two (2) years . . . is still unable to take full accountability and acknowledge the physical abuse the Children experienced and witnessed.[29]

(11)  DSCYF employees also testified about their efforts to reunite the family.  Father faulted DSCYF for preventing him from visiting with the children.  He contended that DSCYF hindered, rather than promoted, the goal of

---

[26] A346 (Visitation Hr'g Tr. dated Nov. 20, 2024, at 180:3–9).

[27] A917 (May TPR Tr. 42:7–9).

[28] A600 (Feb. TPR Tr. 56:4–10).

[29] *Order* at 19.

reunification.[30] DSCYF explained that the children were extremely hostile towards Father.[31] A DSCYF witness suggested that the family might benefit from "therapeutical visitations," but the witness did not indicate that that was mandatory under Father's case plan.[32]

(12) Last, the court heard testimony regarding the children's current placement. At the time of the May termination hearing, J.L. was hospitalized at a psychiatric institution,[33] and J.R. was living with a foster family.[34]

(13) The Family Court terminated Father's parental rights on June 2, 2025. Father appealed to this Court. Father challenges the TPR Order on three grounds. He claims that the Family Court erred in finding that: (1) he failed to comply with all elements of his case plan; (2) DSCYF made reasonable efforts to reunite the family; and (3) termination of his parental rights served the best interests of the children.[35] After a careful review of the record, we find that Father's second and

---

[30] *See, e.g.*, A551–52, 760–62 (Feb. TPR Tr. 7:17–8:20, 216:24–218:10).

[31] *See, e.g.*, A760–62 (Feb. TPR Tr. 216:24–218:10) (J.L. held a chair and threatened to throw it at Father); A61–62 (Review Hr'g Order dated July 21, 2023, at 2–3) (J.L. threatened to kill Father by stabbing him in his sleep and J.R. indicated that he wished Father was dead); A724 (Feb. TPR Tr. 180:6–7) (J.R. stated that he hated Father).

[32] A669 (Feb. TPR Tr. 125:1–6).

[33] A1047 (May TPR Tr. 172:12–18).

[34] A1024 (May TPR Tr. 149:17–24).

[35] Opening Br. 33–34.

third arguments are meritless and affirm on the basis of the Family Court's opinion on those two issues.[36] We now turn to Father's first argument.

(14) In reviewing an appeal from the Family Court, "[w]hen the issues on appeal implicate rulings of law, our review is *de novo* and this Court will set aside erroneous interpretations of applicable law."[37] "We review claims of infringement upon constitutional rights *de novo*."[38] Whereas, "[i]f the trial judge has correctly applied the pertinent law, our review is limited to abuse of discretion."[39] We "will not disturb inferences and deductions that are supported by the record and the product of an orderly and logical deductive process."[40]

(15) Father contends that the court erred in finding that he did not comply with the third and fourth elements of his case plan – Relationship & Community Support and Behavior Issues. We discuss each element in turn.

(16) Regarding the Relationship & Community Support element, we find that the Family Court's judgment was supported by the record. The case plan

---

[36] We find the Family Court's analysis regarding DSCYF's reunification efforts and the Children's best interests thorough and well-supported by the record. As to reunification efforts, the court stated that DSCYF had offered numerous service referrals to assist Father in completing his case plan. As to the children's best interests, the court correctly followed the statutory requirements and examined each factor set forth under 13 *Del. C.* § 722. We decline to disturb the court's findings on these matters.

[37] *In re Stevens*, 652 A.2d 18, 23 (Del. 1995) (citation omitted).

[38] *George v. DSCYF*, 150 A.3d 768, 2016 WL 6302525, at *2 (Del. Oct. 27, 2016) (TABLE).

[39] *Powell v. DSCYF*, 963 A.2d 724, 731 (Del. 2008).

[40] *Id.*

8

required that Father "demonstrate acts of protection for his children . . . when they are cared for by others."[41]  However, Father rarely inquired about the children's medical conditions or academic performance while they were in DSCYF's care.  The criminal no-contact order cannot excuse Father from his failure because it did not prevent him from reaching out to DSCYF workers to check on his children.  We hold that the Family Court's conclusion was supported by the record and was "the product of an orderly and logical deductive process."[42]

(17)  Regarding the Behavior Issues element, Father raises a constitutional argument.  He contends that the court violated his Fifth Amendment right by forcing him to admit to physical violence against the children – subjecting him to criminal liability – to fulfill an element of his case plan.[43]  This argument is meritless.  We addressed this issue in *Sierra v. DSCYF*.[44]  In *Sierra*, the Family Court found that a child had been physically injured, but the parent denied abusing the child.[45]  The court reasoned that, given the parent's denial of culpability and the unexplained injuries to the child, the parent's home was unsafe for the child.  The court terminated the parental rights in the child and the parent appealed, claiming that the court

---

[41] A597 (Feb. TPR Tr. 53:1–6).

[42] *Powell*, 963 A.2d at 731.

[43] Opening Br. 21–22.

[44] 238 A.3d 142 (Del. 2020).

[45] *Id.* at 158–59.

violated his constitutional rights.[46]  This Court rejected the parent's argument.

Specifically, this Court stated:

> [I]t is important to distinguish between an affirmative order requiring admission, which violates the right not to self-incriminate, and an order setting reasonable conditions for returning the child that are not related directly to culpability . . . . If [the concern for the child's safety] conflicts with the parents' admission of culpability, the court could reasonably prioritize the safety of the child.  The parents had the right not to incriminate themselves, but they did not have the right to avoid the consequences of no explanation for the injuries.  Further alleviating the Fifth Amendment concern, the court found the lack of explanation was "not dispositive alone," and it provided additional reasons for why it concluded that "the conditions resulting in the prior findings likely continue to exist."[47]

The situation here is almost identical to *Sierra*.  The Family Court found that the children had been physically abused but Father denied culpability.  He also referred to J.L. in insulting terms and was adamantly against reassessing his approach to parenting.[48]  The court therefore concluded that "the conditions resulting in the prior findings" were unlikely to change.[49]  Father's attitude, combined with his refusal to acknowledge past physical abuse, supports the Family Court's judgment regarding this element under the *Sierra* standard.  We therefore find that

---

[46] *See id.*

[47] *Id.* at 159.

[48] A346 (Visitation Hr'g Tr. dated Nov. 20, 2024, at 180:3–9).

[49] *Sierra*, 238 A.3d at 159; *Order* at 22–23.

10

the court did not err when it determined that Father failed to meet this element of his case plan.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.[50]

BY THE COURT:

/s/ N. Christopher Griffiths
Justice

---

[50] Because we affirm the Family Court's judgment as to the TPR Order, we need not reach the Visitation Order to resolve this appeal.