IN THE SUPREME COURT OF DELAWARE

| | | |
|---|---|---|
| ASHLEY HORTON,[1] | § | |
| | § | No. 528, 2018 |
| Respondent Below– | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below–Family Court |
| | § | of the State of Delaware |
| DEPARTMENT OF SERVICES | § | |
| FOR CHILDREN, YOUTH AND | § | File No.  18-01-03TN |
| THEIR FAMILIES, | § | Pet. No.  18-01530 |
| | § | |
| Petitioner Below– | § | |
| Appellee. | § | |

Submitted:  April 5, 2019
Decided:  May 1, 2019

Before **STRINE**, Chief Justice; **VAUGHN** and **SEITZ**, Justices.

**O R D E R**

Upon consideration of the appellant's brief filed under Supreme Court Rule 26.1(c), her attorney's motion to withdraw, and the appellee's response and motion to affirm, it appears to the Court that:

(1)    This is an appeal from the Family Court's September 14, 2018 order that terminated the parental rights of Ashley Horton ("Mother") in her one-year old son ("M.D.")  The Family Court's order also terminated the parental rights of the

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

child's father ("Father"), who is not a party to this appeal. We only recite the facts in the record as they relate to Mother's appeal.

(2) Mother's counsel has filed a no-merit brief and a motion to withdraw under Supreme Court Rule 26.1(c). Counsel asserts that she made a conscientious review of the record and found no arguable claim to raise on appeal. Mother's counsel informed Mother of the provisions of Rule 26.1(c) and provided her with a copy of the motion to withdraw and accompanying brief. Mother did not respond with any points for the Court's consideration on appeal. The appellee, the Department of Services for Children, Youth and Their Families ("DSCYF"), has filed a response to counsel's Rule 26.1 brief and has moved to affirm the Family Court's judgment. The guardian *ad litem* appointed to represent the interests of the child also moved to affirm the Family Court's judgment.

(3) On April 3, 2017, Arkansas Child Protective Services ("AK CPS"), contacted DSCYF and requested a welfare check on an unknown newborn. AK CPS reported to DSCYF it had taken custody of Mother's other three minor children in August of 2016 after Mother and Father were involved in an armed stand-off with police during which the children were present.[2] AK CPS further reported that Mother testified positive for illegal substances at the time of the stand-off. She had

---

[2] Mother is from Arkansas while Father is a native Delawarean. They met when Father was visiting his sister in Arkansas. Father is not the biological father of Mother's other three children.

2

since left Arkansas and informed AK CPS that she was pregnant and living in Delaware. After DSCYF unsuccessfully attempted to conduct a welfare check on Mother's child (later identified as M.D., born March 21, 2017), it filed for emergency custody. On April 20, 2017, the Family Court entered an emergency *ex parte* order awarding custody of M.D. to DSCYF.

(4) Through no fault of her own, Mother did not appear at the preliminary protective hearing on April 24, 2017. An adjudicatory hearing was held over two days, on May 22, 2017 and July 21, 2017. On the second day of testimony, Mother stipulated that M.D. was dependent in her care given her lack of appropriate housing. The Family Court also concluded M.D. was dependent in Mother's care based upon Mother's substance abuse. The Family Court found DSCYF had made reasonable efforts to prevent out-of-home placement and that placement with relatives was not appropriate. Mother had not appeared in the Arkansas dependency proceedings for her other three children and AK CPS had changed the goal from reunification to termination of parental rights ("TPR") with respect to them.

(5) The Family Court held a dispositional hearing on September 15, 2017. By the time of the dispositional hearing, Mother's rights to her other three children had been involuntarily terminated in Arkansas. Nevertheless, DSCYF entered into a case plan for Mother's reunification with M.D. The plan called for Mother to complete a mental health evaluation and follow all recommendations, complete a

3

substance abuse evaluation and participate in any recommended treatment, resolve outstanding legal issues, meet with a parent aide, obtain stable employment and housing, and consistently attend visitation and the child's medical appointments. Testimony revealed that, since returning to Delaware with Mother, Father had incurred numerous criminal charges. The most recent charges stemmed from a domestic dispute between Mother and Father that took place on August 24, 2017. Father was arrested and charged with menacing. A no contact order between Father and Mother was put in place. Mother had told DSCYF she was contemplating returning to Arkansas and provided her aunt's name for the purposes of conducting an Interstate Compact for the Placement of Children ("ICPC") home study. However, Mother had not provided DSCYF with contact information for her aunt.

(6) The Family Court held a review hearing over two days on December 7, 2017 and January 3, 2018. At the time of the review hearing, DSCYF had filed a motion to change the goal from reunification to TPR/adoption. The no contact order between Mother and Father had been lifted after Mother failed to appear as a witness for Father's criminal trial for menacing. Mother and Father were once again residing together. The court found Mother's compliance with her case plan was mixed. Mother was consistently attending weekly visits with M.D. However, the status of Mother's substance abuse treatment was unclear and she had not yet obtained stable employment, completed a parenting course, or demonstrated financial stability.

4

(7) The Family Court held a permanency hearing on April 13, 2018. Mother did not appear at the hearing. Mother's DSCYF treatment worker testified she had spoken with Mother on March 6, when Mother informed her that Mother was returning to Arkansas. Mother asked about the procedure for obtaining permission to have M.D. placed with her in Arkansas but had not provided DSCYF with the information necessary to initiate the ICPC process. Mother had not been in contact with her treatment worker since March 8, when Mother called her worker to report that she had made it safely to Arkansas. DSCYF did not know where, or with whom, Mother was living. Father participated by telephone from prison in Arkansas. He testified he had followed Mother to Arkansas because he needed to make sure she was provided for. Mother had not visited with M.D. since she left Delaware on March 6 and Mother was otherwise failing to comply with her case plan for reunification. The Family Court granted DSCYF's motion to change the goal from reunification to TPR/adoption due to Mother's failure comply with her case plan. The Family Court also took note of the fact that Mother had been out of Delaware for over a month before the permanency hearing and had not appeared, either in person or via telephone, for the hearing. Finally, the Family Court observed that, due to Mother's involuntary TPRs in Arkansas, Arkansas was unlikely to approve an ICPC home study in order for M.D. to be placed with Mother.

(8) The TPR hearing was held on June 7, 2018. Mother appeared with counsel. Mother and Father both participated by telephone from Arkansas, where they were residing together with Mother's father. The Family Court heard testimony from multiple witnesses. Mother had not returned to Delaware since March 6 to visit with M.D. or otherwise work on her case plan. In its eighty-three page post-hearing opinion, the Family Court found clear and convincing evidence that Mother had failed to plan for M.D.,[3] that Mother's parental rights over M.D.'s siblings were involuntarily terminated in a prior proceeding,[4] that DSCYF had made reasonable efforts at reunification, and that termination of Mother's parental rights was in the best interest of the M.D.[5]

(9) On appellate review of a termination of parental rights, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[6] We review legal rulings *de novo*.[7] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[8] If the trial judge has correctly applied the law, our review is limited to abuse of discretion.[9]

---

[3] 13 *Del. C.* § 1103(a)(5).
[4] 13 *Del. C.* § 1103(a)(6).
[5] 13 *Del. C.* § 1103(a).
[6] *Scott v. DSCYF*, 2012 WL 605700, at *1 (Feb. 27, 2012).
[7] *Wilson v. Div. of Fam. Servs.*, 988 A.2d 435, 440 (Del. 2010).
[8] *Id.*
[9] *Powell v. DSCYF*, 963 A.2d 724, 731 (Del. 2008).

(10) The statutory framework under which the Family Court may terminate parental rights requires two separate inquires.[10] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[11] Second, the court must determine whether termination of parental rights is in the best interest of the child.[12] When the statutory basis for termination of parental rights is failure to plan adequately for the child's physical, mental, or emotional needs,[13] there must be proof of a least one additional statutory factor[14] and proof that DSCYF made *bona fide* reasonable efforts to reunify the family and preserve the family unit.[15] All of these requirements must be established by clear and convincing evidence.[16]

(11) In this case, the Family Court found clear and convincing evidence that Mother had failed to plan adequately for M.D.'s needs, that DSCYF made reasonable efforts to plan with Mother, that failure to terminate the relationship between Mother and M.D. would result in continued emotional instability for M.D., that Mother had prior involuntary TPRs with respect to her other three children, and

---

[10] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[11] *Id.* at 537. *See also* 13 *Del. C.* § 1103(a) (enumerating the grounds for termination of parental rights).

[12] 13 *Del. C.* § 722(a) (identifying factors to be considered when determining the best interest of the child).

[13] 13 *Del. C.* § 1103(a)(5).

[14] 13 *Del. C.* § 1103(a)(5)a (specifying additional factors to be considered when the child is in the care of DSCYF or another licensed agency).

[15] *In re Hanks*, 553 A.2d 1171, 1179 (Del. 1989).

[16] *Powell*, 963 A.2d at 731.

that termination of Mother's parental rights was in the best interest of M.D. After careful review of the record, we conclude there is ample evidence to support the Family Court's termination of Mother's parental rights. We find no abuse of discretion in the Family Court's factual findings, and no error in its application of the law to the facts.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice