# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDREW P. PAGE,[1] | § | |
| | § | No. 337, 2021 |
| Respondent Below, | § | |
| Appellant, | § | |
| | § | Court Below–Family Court |
| v. | § | of the State of Delaware |
| | § | |
| DEPARTMENT OF SERVICES | § | |
| FOR CHILDREN, YOUTH AND | § | File No. 21-02-08TN |
| THEIR FAMILIES (DSCYF), | § | Petition No. 21-03928 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: March 16, 2022
Decided: June 13, 2022

Before **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

## <u>ORDER</u>

After consideration of the appellant's brief filed under Supreme Court Rule 26.1(c), his attorney's motion to withdraw, the appellee's response, the Child Attorney's response, and the record on appeal, it appears to the Court that:

(1) By order dated October 4, 2021, the Family Court terminated the parental rights of the appellant, Andrew Page (the "Father"), in his minor daughter (the "Child").[2] The Father appeals.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

[2] The Family Court's order also terminated the parental rights of the Child's mother, who is not a party to this appeal. We refer only to facts in the record that relate to the Father's appeal.

(2) On appeal, the Father's counsel has filed an opening brief and motion to withdraw under Rule 26.1(c). Counsel asserts that she has conducted a conscientious review of the record and the relevant law and has determined that the Father's appeal is wholly without merit. In accordance with Rule 26.1(c), however, counsel has identified two arguably appealable claims for the Court to consider. Counsel informed the Father of the provisions of Rule 26.1(c), provided him with a copy of counsel's motion to withdraw and the accompanying brief, and advised him that he could submit in writing any additional points that he wished for the Court to consider. The Father has not provided any points for the Court's consideration. The appellee, the Department of Services for Children, Youth and Their Families (DSCYF), and the Child's Attorney have filed responses to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) The record reflects that DSCYF opened a treatment case concerning the Child when she tested positive for fentanyl at birth and the Child's mother tested positive for amphetamines, benzos, and methadone. Under a safety plan agreed to by the parties, the Child's parents would reside with the Father's mother (the "Paternal Grandmother") and would not have unsupervised contact with the Child. In March 2020, when the Child was two months old, DSCYF filed an emergency petition for custody of the Child after she was found alone with her parents in the Paternal Grandmother's home with heroin near her bedding. With the filing of

2

DSCYF's dependency-and-neglect petition, the mandated hearings ensued.[3] At each of the hearings—several of which the Father did not attend—the Family Court found that the Child was dependent and that it was in her best interests to remain in DSCYF's care and custody. The court also found that DSCYF was making reasonable efforts to reunify the family.

(4)   DSCYF developed a case plan for the Father designed to facilitate his reunification with the Child. The plan identified the Father's substance-abuse and mental-health issues as major concerns as well as his lack of stable employment or income. The plan required the Father to work with a family interventionist to address these issues, among others.

(5)   Following a permanency hearing on April 5, 2021—more than one year after the Family Court granted custody of the Child to DSCYF—the Family Court granted DSCYF's motion to change the permanency goal from reunification to termination of parental rights (TPR) and adoption. An evidentiary hearing on the TPR petition was held over three days—July 12, 2021, July 16, 2021, and September 3, 2021. The Family Court heard testimony from several witnesses, including the Father, who appeared with counsel; Jessica Kula, the DSCYF treatment worker; Sara Riffe, the DSCYF permanency supervisor; Jillian Bielicki, the family

---

[3] When a child is removed from home by DSCYF and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. Pro. Rs. 212-219.

interventionist; Dorinda Toney, the clinical director from the addiction-treatment center Pace; Vernell Proctor, the Father's counselor at Brandywine Counseling & Community Services; and Jenny Calhoun, the Child's foster mother.

(6) The testimony at the TPR hearing, together with the pretrial stipulation filed by the parties, fairly established that the Father: tested clean between May 17, 2021, and June 10, 2021; received a substance abuse evaluation at Pace on June 11, 2021; completed an anger-management program at Brandywine; was attending counseling sessions at Brandywine; had established a budget with the family interventionist two weeks prior to the TPR hearing; and, since April 2021, had consistently attended visits with the Child as well as meetings with the family interventionist. The evidence also reflected, however, that: the Father's only income was unemployment benefits; prior to April 2021 (again, more than a year after the Family Court granted custody of the Child to DSCYF); the Father inconsistently attended visits with the Child; the Father had not started parenting classes; and the Father had outstanding warrants related to the drug possession and endangering the welfare of a child charges stemming from the incident that led to the Child coming into care. The evidence also reflected that the Father struggled to maintain sobriety. After refusing to sign consents to give DSCYF access to his medical records until December 2020, the Father tested positive for illegal substances four times between January and March 2021. In March 2021, the Father admitted to struggling with

4

fentanyl during the previous year, tested positive for fentanyl and methadone, and admitted that he had stopped taking the medications that had been prescribed for his mental health diagnoses. The Father was admitted to a 90-day inpatient program at Gaudenzia, which he left against medical advice after roughly 30 days. Moreover, the Father was discharged from Pace in June 2021 after failing to report for a urine screen. In the pretrial stipulation, the Father acknowledged that he had not completed his case plan but argued that he should be given more time to do so. Finally, the evidence presented at the TPR hearing reflected that the Child is flourishing in her foster home and has bonded to her foster family, who wish to adopt her.

(7) On October 4, 2021, the Family Court issued a written decision terminating the rights of the Father in the Child. The Family Court first found that DSCYF had proved by clear and convincing evidence that the Father was unable or had failed to "plan adequately for the [Child's] physical needs or mental and emotional health and development" under 13 *Del. C.* § 1103(a)(5).[4] In doing so, the Family Court found that the Father had failed to satisfy a number of the elements of his case plan, including obtaining financial instability and maintaining sobriety.

---

[4] 13 *Del. C.* § 1103(a)(5).

(8) When the statutory basis for termination is failure to plan, there must be proof of at least one additional statutory condition[5] and proof that DSCYF made *bona fide* reasonable efforts to preserve the family unit.[6] In this case, the Family Court found proof of two additional statutory conditions: (i) the Child had been in the custody of DSCYF for more than six months,[7] and (ii) failure to terminate the Father's parental rights would result in continued emotional instability or physical risk to the Child because the conditions that led to the Child's placement in foster care or similar continued to exist.[8] Citing the Father's case plan, the Family Court also found by clear and convincing evidence that DSCYF had made reasonable efforts to reunify the Father with the Child.

(9) Turning to the eight best-interests factors under 13 *Del. C.* § 722, the Family Court found that four factors favored termination (factors three, four, five, and six), one factor weighed against termination (factor one), two factors were neutral (factors two and seven), and gave little weight to the eighth factor. After conducting its best-interests analysis, the court found by clear and convincing evidence that termination of the Father's parental rights was in the Child's best interests.

---

[5] *Id.* § 1103(a)(5)(a)(1)-(5) (listing additional conditions).
[6] *In re Hanks*, 553 A.2d 1171, 1179 (Del. 1989).
[7] 13 *Del. C.* § 1103(a)(5)(a)(1).
[8] *Id.* § 1103(a)(5)(a)(5).

(10) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[9] We review legal rulings *de novo*.[10] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[11] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[12] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[13]

(11) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[14] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[15] If the Family Court finds a statutory basis for termination of parental rights, the court must determine whether, under 13 *Del. C.* § 722, severing parental rights is in the best interests of the child.[16] Both of these requirements must be established by clear and convincing evidence.[17]

---

[9] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[10] *Id.* at 440.
[11] *Id.*
[12] *Id.*
[13] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[14] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[15] *Id.* at 537.
[16] *Id.*
[17] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731-32 (Del. 2008).

(12) The Father has not submitted any points for this Court's consideration on appeal. Appointed counsel has set forth two arguably appealable issues: (i) because the Father had completed the majority of his case plan requirements, the Family Court should have given him more time to plan for reunification with the Child, and (ii) the Family Court erred when it weighed the best-interests factors.

(13) Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts. And we find no merit to the issues counsel raises. The Family Court properly considered the effect on the Child, who is bonded to her foster family, their family, and their community, when it concluded that there was no benefit to prolonging her stay in foster care to permit the Father—who had been given seventeen months to complete his case plan, well in excess of the six months DSCYF is required to provide in the case of an infant—additional time to complete his case plan. The Family Court appropriately found, moreover, that the Father's wishes (factor one) weighed against termination and gave little weight to the Father's outstanding criminal charges (factor eight) in light of COVID-19-related court delays. The Family Court also rationally concluded that factor three (the interaction and interrelationship of the child with the members of her household) weighed in favor of granting the TPR petition where, as here, the Child has resided with her foster family for the majority

8

of her life and has had inconsistent visitation with her parents over a period encompassing one-and-one-half years. Finally, although the Father's recent efforts to address his substance-abuse issues are commendable, his progress was not significant enough to find that factor five (the parties' mental and physical health) weighed in his favor. We therefore conclude that the Father's appeal is wholly without merit and devoid of any arguably appealable issue. And we are satisfied that the Father's counsel made a conscientious effort to examine the record and the law and properly determined that the Father could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court be AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:


*/s/ Gary F. Traynor*
Justice

9