IN THE SUPREME COURT OF THE STATE OF DELAWARE

AUGUST KLINE,[1] § 
 § No. 292, 2022
    Respondent Below, §
    Appellant, §
 § Court Below–Family Court
    v. § of the State of Delaware
 §
DELAWARE DIVISION OF §
FAMILY SERVICES, § File No. 22-06-5TK
 § Petition No. 22-11760
    Petitioner Below, §
    Appellee. §

Submitted: December 29, 2022
Decided: February 28, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

After consideration of the appellant's brief filed under Supreme Court Rule 26.1(c), her attorney's motion to withdraw, the appellee's response, the Child Attorney's response, and the record on appeal, it appears to the Court that:

(1)    By order dated July 19, 2022, the Family Court terminated the parental rights of the appellant, August Kline (the "Mother"), in her minor daughter (the "Child").[2]  The Mother appeals.

---

[1] The Court previously assigned pseudonyms to the appellant under Supreme Court Rule 7(d).

[2] The Family Court's order also terminated the parental rights of the Child's unknown father. We refer only to facts in the record that relate to the Mother's appeal.

(2) On appeal, the Mother's counsel has filed an opening brief and motion to withdraw under Rule 26.1(c). Counsel asserts that he has conducted a conscientious review of the record and the relevant law and has determined that the Mother's appeal is wholly without merit. Counsel informed the Mother of the provisions of Rule 26.1(c), provided her with a copy of counsel's motion to withdraw and the accompanying brief, and advised her that she could submit in writing any additional points that she wished for the Court to consider. The Mother has not provided any points for the Court's consideration. The appellee, the Delaware Division of Family Services (DFS), and the Child's Attorney have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) In the summer of 2021, the Mother, then pregnant with the Child, relocated to Delaware from Michigan and moved in with the Mother's former foster sister, Aspyn, and her wife, Mallori. In August 2021, shortly after the Mother gave birth to the Child, DSF received a hotline call reporting, among other things, that the Mother was inattentive to the Child, was threatening hospital staff, and had prior history with child-protection services in Michigan. DFS met with the Mother and established a safety plan under which the Mother and the Child would continue to reside with Aspyn and Mallori and the Mother would not, among other things, co-sleep with the Child. In September 2021, the Mother and Mallori engaged in a

2

heated argument and the Mother was asked to leave the home. At that time, the Mother, who was unemployed and now homeless, agreed to sign over guardianship of the Child to the Aspyn and Mallori. After the Mother rescinded her consent for the guardianship, the Family Court granted DFS's *ex parte* petition for custody of the Child on September 27, 2021.

(4) With the filing of DFS's dependency-and-neglect petition, the mandated hearings ensued.[3] At the preliminary protection hearing and the adjudicatory hearing, the Mother stipulated that the Child was dependent in her care and that it was in the Child's best interest to remain in DFS's custody. The Family Court found that DFS had made reasonable efforts to identify family members as placement resources. Indeed, the Mother, who grew up in foster care in Oklahoma, had not identified any relatives for DFS to contact.

(5) In November 2021, the Family Court held a dispositional hearing to review the case plan that DFS had developed to facilitate the Mother's reunification with the Child. The plan required the Mother—whose parental rights in the Child's older sibling were involuntarily terminated in Michigan in 2018 and who had been diagnosed with depression and anxiety—to engage in mental-health counseling as well as undergo a mental-health evaluation and follow any treatment

---

[3] When a child is removed from home by DFS and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. Pro. Rs. 212-219.

recommendations. The plan also called for the Mother to obtain stable employment and housing, establish a budget, and attend parenting classes.

(6) As of the December 21, 2021 three-month review hearing, the Mother had not yet undergone a mental-health evaluation. The Mother had been unable to take her prescribed medications because her medication-management appointments had been canceled because of a lack of providers. Although the Mother wished to return to Michigan, she was currently renting a room in Delaware. DFS had concerns about the home because another resident told DFS that she intended to petition for a protection-from-abuse order against the Mother. The Mother was, however, enrolled in parenting classes, engaged with a family interventionist, and enjoying regular visits with the Child.

(7) In the weeks leading up to the February 14, 2022 six-month review hearing, the Mother had moved to Oklahoma to live with a cousin but had since decided to return to Michigan and resume living with her friend Tiffany. The Mother participated in the six-month review hearing remotely. Before leaving Delaware, the Mother had completed a psychological evaluation with Patrick Zingaro, PsyD. Dr. Zingaro recommended that the Mother participate in additional counseling and undergo a psychiatric evaluation in light of her previous treatment for trauma and her belief that she was suffering from post-partum depression. Notably, the Mother's DFS treatment worker had advised the Mother that it would be difficult for

4

DFS to provide her with services (including referrals) if she was living in another state. Although the Mother had completed a parenting class and was participating in virtual visits with the Child, she had not obtained stable housing or employment.

(8) Before the April 26, 2022 permanency hearing, DFS filed a motion to change the permanency plan from reunification to termination of parental rights (TPR) for the purpose of adoption. As of the permanency hearing, the Mother was living with Tiffany in Michigan and had returned to the job she held before she relocated to Delaware in 2021. The Mother had neither obtained stable housing nor undergone a psychiatric evaluation. Although the Mother testified that she did not feel she needed mental-health therapy, she had purportedly been engaged with a licensed counselor for approximately one month. The counselor, who testified that she was a "certified life coach," had not reviewed the Mother's medical records, did not know what medications the Mother was taking, and did not believe that the Mother had any mental-health issues. The DFS treatment worker explained that it was difficult for the Child to engage in virtual visits with the Mother given an infant's short attention span. The Mother had not visited with the Child in person since January, and the Mother had not had any contact with the Child's court-appointed special advocate in several weeks. At the conclusion of the hearing, the Family Court changed the permanency goal from reunification to the concurrent goals of reunification and TPR for the purpose of adoption.

(9) On June 13, 2022, DFS filed a petition for the termination of the Mother's parental rights in the Child on two bases: the Mother's failure to plan and the Mother's prior involuntary TPR. On July 11, 2022, the parties convened for the TPR hearing. The Family Court heard testimony from the Mother, the therapist with whom the Mother had recently begun working in Michigan, Aspyn, Mallori, Tiffany, the DFS treatment supervisor, the Child's DFS permanency worker, a former Texas police officer responsible for investigating a sexual assault the Mother had reported, and the Child's foster mother.

(10) As of the TPR hearing, the Mother had completed components of her case plan: she had attended parenting classes, was employed, and had recently obtained approval of her housing in Michigan under the Interstate Compact on the Placement of Children. Evidence presented also fairly established, however, that the Mother had not addressed the critical mental-health component of her case plan. In early 2022, the Mother had travelled to Texas to visit a man who allegedly sexually assaulted her. The Mother, who had initially been argumentative with DFS about her need for mental-health counseling, had only just began therapy in earnest in May, and the therapist had not yet explored with the Mother the circumstances surrounding her prior TPR or her childhood trauma. Notably, the Mother had not disclosed to her therapist that she had recently been a victim of sexual assault.

6

Finally, the Mother had not undergone the psychiatric evaluation recommended by Dr. Zingaro.

(11) The evidence presented further established that the Mother had not been interacting with the Child or her caregivers in a meaningful manner for some time. Although arrangements had been made for the Mother to participate in the Child's medical visits via Zoom, the Mother had not availed herself of them. Of the six virtual visits facilitated by the permanency worker, the Mother had missed two. Perhaps most importantly, the Mother had not seen the Child in person in almost six months, and the Child was not bonded to the Mother. On the other hand, the Child was bonded to her foster mother, an adoptive resource, and her foster mother's family, friends, and community. Following the hearing, the Family Court issued a written order terminating the Mother's rights in the Child on the dual bases of the Mother's failure to plan and the Mother's prior involuntary TPR. This appeal followed.

(12) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[4] We review legal rulings *de novo*.[5] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly

---

[4] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[5] *Id.* at 440.

erroneous.[6]  If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[7]  On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[8]

(13)   The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[9]  First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[10] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition.[11]  If the Family Court finds a statutory basis for termination of parental rights, the court must determine whether, under 13 *Del. C.* § 722, severing parental rights is in the best interests of the child.[12]  Both of these requirements must be established by clear and convincing evidence.[13]

(14)   Here, the Family Court found that DFS had proved, by clear and convincing evidence, that the termination of the Mother's parental rights was appropriate based on her failure to plan adequately for the Child's physical needs or

---

[6] *Id.*
[7] *Id.*
[8] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[9] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[10] *Id.* at 537.
[11] 13 *Del. C.* § 1103(a)(5)(a)(1)-(5) (listing additional conditions).
[12] *Shepherd*, 752 A.2d at 536-37.
[13] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

mental and emotional health and development[14] and that the Child, who came into DFS's care as an infant, had been in DFS custody for more than six months.[15] The Family Court also found that DFS had proved, by clear and convincing evidence, that the Mother had previously had her parental rights in the Child's sibling involuntarily terminated.[16] Finally, the Family Court examined the best-interests factors set out in 13 *Del. C.* § 722 and found, by clear and convincing evidence, that termination of the Mother's parental rights was in the Child's best interests.

(15) The Mother has not submitted any points for this Court's consideration on appeal. Appointed counsel represents that he has determined that no arguably appealable issue exists. Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts. We therefore conclude that the Mother's appeal is wholly without merit and devoid of any arguably appealable issue. We are satisfied that the Mother's counsel made a conscientious effort to examine the record and the law and properly determined that the Mother could not raise a meritorious claim in this appeal.

---

[14] 13 *Del. C.* § 1103(a)(5).
[15] *Id.* § 1103(a)(5)(a)(1).
[16] *Id.* §1103(a)(6).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:

_/s/ Collins J. Seitz, Jr._
Chief Justice