IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHARLES BANKS,[1] | § | No. 9, 2023 |
| | § | |
| Respondent Below, | § | Court Below—Family Court |
| Appellant, | § | of the State of Delaware |
| | § | |
| v. | § | File No. 22-08-10TN |
| | § | |
| DEPARTMENT OF SERVICES | § | Petition No. 22-18508 |
| FOR CHILDREN, YOUTH, AND | § | |
| THEIR FAMILIES/DIVISION OF | § | |
| FAMILY SERVICES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: May 3, 2023
Decided: June 6, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

After consideration of the appellant's brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses, and the Family Court record, it appears to the Court that:

(1)    This is an appeal from the Family Court's order dated December 13, 2022, that terminated the appellant's ("Father") parental rights as to his child born in April 2021 (the "Child"). The Family Court's order also terminated the parental

---

[1] The Court previously assigned a pseudonym to the appellant pursuant to Supreme Court Rule 7(d).

rights of the Child's mother ("Mother"), who has a separate appeal pending before this Court. We focus on the facts in the record as they relate to Father's appeal.

(2)    Father's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26.1(c).    Father's counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel informed Father of the provisions of Rule 26.1(c) and provided him with a copy of the motion to withdraw and the accompanying brief.  Counsel also informed Father of his right to supplement counsel's presentation.  Father did not respond with any points that he wanted to present for the Court's consideration.  The Department of Services for Children, Youth, and Their Families, Division of Family Services ("DFS") as appellee and the Child's attorney from the Office of the Child Advocate have responded to the Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3)    Mother resided in a home with her husband, who was not the appellant, and three older children.  Before the Child's birth, the family had a lengthy history with DFS relating to Mother's substance abuse.  At the Child's birth in April 2021, Mother and the Child tested positive for drugs, including methamphetamines and fentanyl.  The hospital made a referral to DFS, which implemented a safety plan under which the Child resided at a neighbor's house after her discharge from the hospital, with no unsupervised contact with Mother.  After the neighbor informed

2

DFS in July 2021 that she was no longer willing to care for the Child, DFS initiated a dependency proceeding seeking custody of the Child. The court transferred custody to DFS, and the Child was placed in a foster home.

(4) The mandated hearings ensued.[2] At the preliminary protective hearing on July 14, 2021, Mother testified that she believed the biological father of the Child was a person she knew only as "C," who her husband testified was a drug dealer. The court ordered that notice of the proceedings be provided to the unknown father by publication and ordered paternity testing as to Mother's husband. Mother testified that she would be entering inpatient drug treatment later that day. The court ordered that supervised visits would be scheduled twice per week after Mother's release from treatment.

(5) At a review hearing on January 13, 2022, elaborating on her prior partial limited identification, Mother identified Father as the Child's biological father and testified that he was incarcerated in Pennsylvania at the time. The court ordered that DFS serve Father and arrange for paternity testing as to Father. A DFS worker made contact with Father approximately one week after the January 2022 hearing, and Father indicated that he was willing to undergo paternity testing.

---

[2] *See Kline v. Del. Div. Family Servs.*, 2023 WL 2259101, at *1 n.3 (Del. Feb. 28, 2023) ("When a child is removed from home by DFS and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules." (citing 13 *Del. C.* § 2514; DEL. FAM. CT. R. CIV. PROC. 212-19)).

3

Paternity testing was eventually conducted using Father's DNA that the testing service had on file, and the court adjudicated Father to be the Child's biological father.

(6) Mother contacted Father in May 2022. The court-appointed special advocate contacted Father's sister and informed her of a permanency hearing that was scheduled for June 28, 2022, and advised that Father should contact DFS about case planning. A DFS worker, Andrea Biedeman, spoke with Father on July 1, 2022. They discussed the status of the proceedings and the case planning process, and Biedeman told Father that he needed to meet with another DFS worker, Diane Bennett, to develop a case plan. Biedeman texted or left messages for Father several more times during July 2022 about the need to develop a case plan and again provided him with Bennett's contact information. They spoke again on July 25, 2022, and Biedeman reiterated the need to contact Bennett to establish a case plan and offered Father the opportunity to arrange for visitation with the Child. Father texted Bennett on July 26 and July 27, 2022, but never met with her to work on a case plan and never scheduled any visits. DFS later learned that he became incarcerated again on July 30, 2022.

(7) The court held a post-permanency review hearing on September 6, 2022, at which time Father was incarcerated in Pennsylvania. Following that hearing, the court appointed counsel to represent Father, although Father still had

4

not appeared for any proceedings. Biedeman and Bennett had a phone call with Father on September 23, 2022, while he was incarcerated in Pennsylvania, to discuss the status of the case. Biedeman emphasized that Father should contact DFS as soon as he was released. On November 9, 2022, Father was released from prison to an inpatient substance abuse program at Gaudenzia in Pennsylvania. He contacted DFS from Gaudenzia approximately one month later, on December 6, 2022, one week before the TPR hearing. Bennett spoke with him a few days later about his progress in the treatment program and his prospects following his release. She asked Father to sign a consent so that she could obtain information from Gaudenzia about his treatment plan; he had not provided a consent by the time of the TPR hearing.

(8)    On December 13, 2022, the Family Court held a post-permanency review and TPR hearing. That was the first hearing at which Father appeared. Father appeared remotely because he was in the inpatient program at Gaudenzia, as ordered by a Pennsylvania court, and was not permitted to leave the state. Father testified regarding his criminal history. That history included various periods of incarceration before the Child's birth, including for two and a half years on a second-degree assault charge to which he pleaded guilty in Delaware arising from an incident in which the victim died. Father testified that, following the Child's birth in April 2021, he had been incarcerated from May 2021 until February 2022 in Pennsylvania for receiving stolen property and possession of amphetamine. Mother had told him that he might

5

be the father as early as when she was pregnant, and in July 2021 she sent him pictures of the Child. On March 28, 2022, he was released from Gaudenzia. He then went to New Hampshire for work.

(9)     Father admitted that he had learned by April or May of 2022, while he was in New Hampshire, that paternity testing had confirmed that he was the Child's biological father. At the end of May 2022, he was adjudicated to be in violation of probation ("VOP") in Pennsylvania; he was incarcerated on the VOP from July 30, 2022, until November 9, 2022. Upon his release, he was in a court-ordered program at Gaudenzia again; at the time of the December 13, 2022 hearing he had been there for more than a month and expected to be there for a total of sixty to ninety days. He estimated that he would need six months following his release to be in a position to care for the Child; he also stated that before he could leave Pennsylvania, Delaware would have to approve transfer of his probation to Delaware. He testified that he had never met the Child. He had completed a parenting class at Gaudenzia and was engaged in mental health counseling. In his closing argument, Father's counsel argued that, although Father had not engaged in case planning with DFS, he had taken the initiative to engage in a number of the components that would have been on a case plan, such as mental health counseling and a parenting class. Counsel asked the court to stay the TPR decision to give Father an opportunity to engage in case planning and to develop a relationship with the Child.

6

(10) The Family Court issued a ruling from the bench at the conclusion of the hearing and entered an order terminating Father's parental rights. The court denied Father's request for a stay and determined that DFS had established, by clear and convincing evidence, a statutory basis for terminating Father's parental rights for failure to plan adequately for the Child within the statutory timeframe.[3] The court found that Father had been aware of his potential paternity since at least July 2021 and had been aware since at least January 2022 that the Child was not in Mother's care, but had not made any effort to obtain paternity testing. The court further found that Father did not attempt to visit with the Child and did not participate in case planning even after he was adjudicated to be the Father more than six months before the TPR hearing. The court also found, by clear and convincing evidence, that DFS had made reasonable efforts to reunify the family. Applying the best interest factors,[4] the Family Court found that DFS had established, by clear and convincing evidence, that it was in the Child's best interests to terminate Father's parental rights.

(11) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[5] We review legal

---

[3] 13 *Del. C.* § 1103(a)(5).

[4] *See id.* § 1103(a) (providing that parental rights may be terminated if one of several statutory grounds is established and "it appears to be in the child's best interest"); *id.* § 722 (setting forth factors that the court may consider when determining the best interests of a child).

[5] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).

rulings *de novo*.[6]  We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[7]  If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[8]

(12)   The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[9]  First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[10] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition.[11]  Second, if the Family Court finds a statutory basis for termination of parental rights, then the court must determine whether terminating parental rights is in the best interests of the child.[12] Both of these requirements must be established by clear and convincing evidence.[13]

(13)   Father has not submitted any points for this Court's consideration on appeal.  Father's appointed counsel represents that he has determined that no

---

[6] *Id.* at 440.
[7] *Id.*
[8] *Id.*
[9] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[10] *Id.* at 537. *See* 13 *Del. C.* § 1103(a) (listing the grounds for termination of parental rights).
[11] 13 *Del. C.* § 1103(a)(5)a-e (listing additional conditions, including that the child has been in DFS custody or placed by a licensed agency for at least one year, or for six months if the child came into care as an infant).
[12] *Shepherd*, 752 A.2d at 537.  *See* 13 *Del. C.* § 722(a) (listing factors for consideration when determining the best interests of the child).
[13] *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

arguably appealable issue exists. After careful consideration of the parties' positions and the record on appeal, we conclude that the judgment of the Family Court should be affirmed on the basis of the Family Court's determination, as set forth in its bench ruling of December 13, 2022, and its Order for Termination and Transfer of Parental Rights of the same date, that there was clear and convincing evidence that Father had failed to plan adequately for the Child's needs, that DFS had made reasonable reunification efforts, and that termination of Father's parental rights was in the best interests of the Child. Those conclusions are well-supported by the record. We therefore affirm.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

9