IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KATHY MOORE,[1] | § | No. 330, 2024 |
| | § | |
| Respondent Below, | § | Court Below—Family Court |
| Appellant, | § | of the State of Delaware |
| | § | |
| v. | § | File No. 24-02-1TK |
| | § | |
| DEPARTMENT OF SERVICES | § | Petition No. 24-03027 |
| FOR CHILDREN, YOUTH, AND | § | |
| THEIR FAMILIES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: December 9, 2024
Decided: February 3, 2025

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

## ORDER

After consideration of the appellant's brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses, and the Family Court record, it appears to the Court that:

(1)     This is an appeal from the Family Court's decision dated July 31, 2024, that terminated Mother's parental rights as to two of her children. We refer to the children by the pseudonyms "Anya" and "Mitchell" (together, the "Children"). The Family Court's order also terminated the parental rights of the Children's father

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d). This order refers to the appellant as "Mother."

("Father"). Father has not appealed, and we therefore focus on the facts in the record as they relate to Mother's appeal.

(2) Mother's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26.1(c). Mother's counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel informed Mother of the provisions of Rule 26.1(c) and provided her with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Mother of her right to supplement counsel's presentation and has included the points that Mother wants to present for the Court's consideration in the opening brief. The Department of Services for Children, Youth and Their Families, Division of Family Services ("DFS") and the children's attorney from the Office of the Child Advocate have responded to the Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) Mother was living with her four older children in a home that she owned in Dover when Anya was born in November 2021. Various other adults lived in the home from time to time. Between 2012 and September 2021, DFS had investigated several cases involving allegations of neglect or abuse of Mother's children; those cases ended with varying levels of concern, but the children remained in Mother's care. In December 2021, shortly after Anya was born, DFS received reports of concern about the children's welfare, including reports that the older children went

2

to school smelling of pet urine and kerosene. The children had also missed a significant amount of school.

(4) When a DFS treatment worker visited the home in late February 2022, the home was cluttered; had holes in the walls and pet urine and feces on the floors; and there was no electricity. The DFS treatment worker spoke with Mother about the children's appearance and hygiene and helped her address some of the issues with the home.

(5) In May 2022, DFS received another report about similar conditions in the home. The DFS treatment worker implemented a safety plan to temporarily remove the children from the home while Mother addressed conditions in the home. Anya and two of her siblings stayed with their maternal grandmother until they returned to Mother's care a few days later. DFS continued to provide treatment services to Mother until October 2022, when they were satisfied that she had satisfactorily addressed the most recent concerns.

(6) In late 2022, the Dover Police Department began making controlled purchases of methamphetamine from people at the home. On December 15, 2022, law enforcement officers executed a search warrant at the home and found methamphetamine in a necklace that belonged to one of the home's residents and in Mother's bedroom, where Anya's crib was also located. Mother was charged with possession of a controlled substance and possession of drug paraphernalia. Anya

3

was present and in Mother's care at the time of the search. Law enforcement officers contacted DFS.

(7) DFS workers went to the home that night and observed stacks of clothes and other items piled several feet high on the countertops and other surfaces. There were trash, feces, and cockroaches throughout the home. DFS implemented a safety plan with Mother, the maternal grandmother, and a friend of Mother's, under which the grandmother and the friend would supervise Mother with the children at all times and assist with cleaning the home. Six days later, a DFS worker made an unannounced visit at Mother's home. Mother and Anya were there without the maternal grandmother or the friend, and Mother acknowledged that she had also been unsupervised with one of the children the previous day.

(8) DFS held an emergency team decision meeting with Mother that same day. DFS suggested a plan that would remove the children from Mother's care for about two weeks while she addressed the conditions at the home, participated in drug screenings, and engaged in a mental health evaluation. Mother left the meeting, stating that she would no longer plan with DFS. DFS then applied for emergency custody of Anya.[2]

---

[2] DFS also applied for emergency custody of some of the other children, while it appears that others went to stay with other relatives. We address the facts and procedural history of this case only as they relate to Anya and Mitchell.

4

(9) The Family Court granted temporary custody of Anya to DFS. Anya was placed in a foster home, and the mandated hearings ensued.[3] DFS developed a case plan for Mother with the goal of reunification. Following a March 22, 2023 hearing, the Family Court found the case plan to be reasonable. The case plan required Mother to maintain stable housing suitable for the children; complete mental health and substance abuse evaluations and engage in any recommended treatment; seek and maintain stable employment with sufficient income to provide for the children; engage in weekly visits with the children; resolve criminal charges that were pending against her; and complete a parenting class.

(10) By May 24, 2023, Mother had made some progress on her case plan. She had completed a mental health evaluation and was receiving mental health services. She had also completed a substance abuse evaluation. She had begun working as a driver for DoorDash and was enrolled in a parenting course. But she was living in a hotel and had pending drug-related criminal charges.

(11) In July 2023, Mother was living in a hotel with Father and the maternal grandmother. DFS was assisting her with a housing application through the Delaware Housing Authority. Mother was pregnant with Mitchell and no longer

---

[3] *See Kline v. Del. Div. Family Servs.*, 2023 WL 2259101, at *1 n.3 (Del. Feb. 28, 2023) ("When a child is removed from home by DFS and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules." (citing 13 *Del. C.* § 2514; DEL. FAM. CT. R. CIV. PROC. 212-19)).

working.  She continued to engage in mental health treatment and the parenting course.

(12)  Mitchell was born in late July 2023.  The Family Court awarded DFS custody of Mitchell two days later, and the court began holding the statutory hearings for Mitchell as well.  Following a hearing in September 2023, the Family Court found that the Children remained dependent as to Mother because she was still living in a hotel; her mental health treatment had lapsed; and she had tested positive for methamphetamine when Mitchell was born.  The court made similar findings in October 2023 and also found that DFS reasonably expected Mother to complete another substance abuse evaluation because she had either missed drug screenings or tested positive for illegal substances several times between June and October 2023.

(13)  DFS then moved to change the permanency goal from reunification to termination of parental rights ("TPR") and adoption.  After two hearings on the motion, the court found that the goal change was appropriate for both Children and in their best interests.  The court emphasized that "Mother has not addressed the most significant aspects of her [case plan]:  she does not yet have stable housing; her life continues to be affected by her substance use; and she has not engaged in the sustained mental health treatment she needs to help avoid the circumstances and

6

decisions that caused the Children (and two of their older siblings) to be removed from her care."

(14) DFS filed a TPR petition in February 2024; trial on the petition was held on April 16, 2024. The court entered a 53-page decision and order terminating Mother's parental rights on July 31, 2024. The court held that DFS had established, by clear and convincing evidence, that Mother had failed to plan adequately for the Children within the statutory timeframe.[4] By the time of the TPR hearing, Mother had reengaged with mental health services, had recently moved into a rented room in the home of a family friend where multiple other people rented rooms, and had part-time work with DoorDash and a retail store. The court found that Mother had completed the required parenting course and had engaged in visitation with the Children, but that her other progress toward reunification had been minimal. The court found that Mother had not consistently engaged in the mental health services that were recommended following her forensic psychological evaluation nor completed the substance abuse evaluation as directed the previous October. It found that Mother had not maintained employment nor stable housing. The court stated that it was "convinced that additional time and services will not remedy the situation: DFS offered Mother treatment services at least twice before [Anya] was born; again for several months after [Anya] was born and before the police raid at [her previous

---

[4] 13 *Del. C.* § 1103(a)(5).

7

home]; and for nearly [sic] a year since the dependency proceedings began." The court determined that DFS had made reasonable efforts toward reunification and to identify relative placements for the Children. Applying the best-interest factors,[5] the Family Court found that DFS had established, by clear and convincing evidence, that it was in the Children's best interests to terminate Mother's parental rights.

(15) On appeal, Mother contends that the Family Court overlooked the progress that she made on her case plan, including as to mental-health counseling, employment, and housing. She asserts that DFS did not help her and made it more difficult for her to take care of her children. She disputes that she had a substance-abuse issue and claims that she tested positive for methamphetamine because people with whom she had physical contact were using it. She emphasizes her positive relationship with the Children and expresses her sincere desire to be reunified with them.[6]

(16) This Court's review of the Family Court's decision to terminate parental rights entails consideration of the facts and the law as well as the inferences

---

[5] *See* 13 *Del. C.* § 1103(a) (providing that parental rights may be terminated if one of several statutory grounds is established and termination "appears to be in the child's best interest"); *id.* § 722 (setting forth factors that the court may consider when determining the best interests of a child).

[6] To the extent that Mother asserts challenges to the search warrant or the execution of that warrant in December 2022, or the charging decisions that the State made after the search, those arguments are beyond the scope of this proceeding.

and deductions made by the Family Court.[7]  We review legal rulings *de novo*.[8]  We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly wrong.[9]  If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[10]

(17)  The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[11]  First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[12]  When the statutory basis for termination is failure to plan adequately for the child's needs, the Family Court must also find proof of at least one additional statutory condition.[13]  Second, if the Family Court finds a statutory basis for termination of parental rights, then the court must determine whether terminating parental rights is in the best interests of the child.[14]  Both of these requirements must be established by clear and convincing evidence.[15]

(18)  After careful consideration of the parties' positions and the record on appeal, including the transcript of the TPR hearing, we conclude that the judgment

---

[7] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[8] *Id.* at 440.
[9] *Id.*
[10] *Id.*
[11] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[12] *Id.* at 537.  *See* 13 *Del. C.* § 1103(a) (setting forth the grounds for termination of parental rights).
[13] *See* 13 *Del. C.* § 1103(a)(5)a-e (listing additional conditions, including that the child has been in DFS custody for at least one year, or for six months if the child came into care as an infant).
[14] *Shepherd*, 752 A.2d at 537.
[15] *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

of the Family Court should be affirmed. The Family Court's findings that Mother had failed to complete important aspects of her case plan at the time of the TPR hearing—when Anya had been in foster care for more than a year and Mitchell had been in foster care for approximately nine months, starting immediately after his birth—and that termination of her parental rights was in the Children's best interests were not clearly erroneous. DFS provided treatment services in an effort to avoid removing Mother's children from her care but continued to identify significant issues relating to the children's hygiene and the conditions in the home. After the children were removed from Mother's care, Mother lost her previous home and was not able to establish stable housing during the more than one year that the dependency proceedings remained pending. We find no error in the Family Court's application of the law to the facts and are satisfied that Mother's counsel made a conscientious effort to examine the record and the law and properly determined that Father could not raise a meritorious claim on appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice