IN THE SUPREME COURT OF THE STATE OF DELAWARE

DANICA STEWART,[1]      §
     § No. 304, 2024
     Respondent Below,      §
     Appellant,      § Court Below–Family Court
     § of the State of Delaware
     v.      §
     § File Nos. CN22-01767
DEPARTMENT OF SERVICES      §      23-06-07TN
FOR CHILDREN, YOUTH AND      § Petition Nos. 22-04446
THEIR FAMILIES (DSCYF),      §      23-13824
     §
     Petitioner Below,      §
     Appellee.      §

Submitted: December 17, 2024
Decided: February 20, 2025

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## ORDER

After consideration of the no-merit brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the appellee's response, the Child Attorney's response, and the Family Court record, it appears to the Court that:

(1) By order docketed July 5, 2024, the Family Court terminated the parental rights of the appellant, Danica Stewart ("Mother"), in her minor daughter, born in August 2020 (the "Child").[2] Mother appeals.

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

[2] The Family Court's order also terminated the parental rights of the Child's unknown father. We refer only to facts in the record that relate to Mother's appeal.

(2)     On appeal, Mother's counsel has filed an opening brief and a motion to withdraw under Rule 26.1(c).  Counsel asserts that he has conducted a conscientious review of the record and the relevant law and has determined that Mother's appeal is wholly without merit.  Counsel informed Mother of the provisions of Rule 26.1(c), provided her with a copy of counsel's motion to withdraw and the accompanying brief, and advised her that she could submit in writing any additional points that she wished for the Court to consider.  Mother has not provided any points for the Court's consideration.  The appellee, the Delaware Department of Services for Children, Youth and Their Families (DSCYF), and the Child's Attorney have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3)     In February 2022, DSCYF received a hotline report describing concerning text messages that Mother had sent to her sister ("Maternal Aunt"), including one in which Mother stated that she had killed their mother and another of a photograph of the Child (then eighteen months old) with what appeared to be blood smeared around her mouth. The hotline caller also reported that Mother had previously been diagnosed with schizophrenia. Thereafter, Mother was involuntarily committed to an inpatient mental health treatment program. After Mother's release from the program, DSCYF and Mother met for a team-decision-making meeting to create a safety plan for the Child's care. During the meeting, Mother, who

2

participated via video, appeared to be talking to herself, exhibited signs of paranoia, and was unable to answer simple questions. On March 7, 2022, the Family Court granted emergency custody of the Child to DSCYF, which had been unable to identify a suitable relative placement for the Child.

(4) With the filing of DSCYF's dependency-and-neglect petition, the mandated hearings ensued.[3] At the preliminary protective hearing, the Family Court found that the Child was dependent in Mother's care because Mother was enrolled in an inpatient mental health treatment program. DSCYF was exploring Maternal Aunt, a resident of Pennsylvania, and a family friend as possible placement options. As of the adjudicatory hearing, at which Mother failed to appear, Mother remained hospitalized at a residential treatment facility, DSCYF had not yet received Mother's mental health treatment records, and the Child was doing well in foster care. At the conclusion of the hearing, the Family Court found that it was in the Child's best interest that she remain in DSCYF's custody.

(5) The May 11, 2022 dispositional hearing was continued because Mother's attorney had not been able to contact Mother, who was participating in an out-of-state inpatient treatment program. At the August 2, 2022 dispositional hearing, the Family Court reviewed the case plan that DSCYF had developed to

---

[3] When a child is removed from his home by DSCYF and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. Proc. R. 212-219.

facilitate Mother's reunification with the Child. A primary component of Mother's case plan concerned Mother's mental health. Specifically, Mother was required to: (i) complete a mental health assessment with an appropriate provider, (ii) sign consents to allow DSCYF to communicate with her treatment providers, (iii) follow all recommended treatment directions, and (iv) attend therapeutic services on a consistent basis. The case plan noted that Mother's failure to comply with the plan's mental-health-treatment component would be fatal to Mother's ability to reunify with the Child. Mother's case plan also required her to complete a parenting class and work with a family interventionist to obtain (and maintain) stable employment and housing. As of the dispositional hearing, Mother, who was living in Pennsylvania, had completed a mental health evaluation in Bucks County, Pennsylvania; signed consents for DSCYF to obtain her treatment records; recently secured employment; enrolled in parenting classes; and been consistently (and appropriately) visiting with the Child. Because Mother was residing in Pennsylvania, however, an Interstate Compact for the Placement of Children (ICPC) home assessment had to be completed before the Child could be returned to Mother's custody.

(6)     As of the January 5, 2023 review hearing, Mother was compliant with her mental health treatment, had completed a parenting class, was enjoying weekly visitation with the Child, and had provided DSCYF with proof of her employment

4

and income. Although DSCYF had completed a virtual home assessment of Mother's housing, an ICPC assessment had not yet been approved. The Family Court found that it was in the Child's best interest that she remain in DSCYF custody.

(7) As of the February 27, 2023 permanency hearing, Mother had completed her case plan. The only impediment to Mother's reunification with the Child was an ICPC approval of her residence. At the conclusion of the hearing, the Family Court directed DSCYF to place the Child with Mother once the ICPC assessment was approved, contingent upon the entry of a safety plan in the event that Mother required familial support.

(8) On June 15, 2023, DSCYF moved to change the permanency plan from reunification to termination of parental rights (TPR) for the purpose of adoption. And on June 29, 2023, DSCYF filed a TPR petition, seeking to terminate Mother's parental rights on the basis of her failure to plan adequately for the Child's physical needs or emotional health and development. The Family Court held a post-permanency hearing on August 3, 2023. In the months that followed the February permanency hearing, Mother had suffered several mental-health-related setbacks, including a lapse in health insurance, inpatient hospitalizations, and a failure to follow up with outpatient care. Because Mother had relocated to a different county in Pennsylvania, DSCYF had to request a new ICPC assessment. At the conclusion of the hearing, the Family Court set a consolidated post-permanency review and TPR

5

hearing for December 4, 2023. On August 14, 2023, the Family Court granted DSCYF's motion to change the permanency plan. The Family Court also ordered an expedited ICPC assessment of Mother's residence in Pennsylvania.

(9) As of the December 4, 2023 post-permanency review and TPR hearing, Mother had failed to receive consistent mental health treatment and her ICPC assessment had been denied because she had failed to meet with the Pennsylvania social worker. An ICPC assessment request for Mother's cousin's residence in Georgia was pending. The Family Court emphasized to Mother that consistent mental health care and the approval of an appropriate stable residence were critical to her being able to assume custody of the Child. The Family Court also noted that, with the exception of the housing and mental-health-care components, Mother had successfully addressed her case plan. At the conclusion of the hearing, the Family Court found that Mother's success in addressing these other elements of her case plan and her positive relationship with the Child prevented the court from finding, by clear and convincing evidence, that Mother had failed to plan adequately for the Child's physical needs or emotional health and development. However, the Family Court advised DSCYF that if Mother continued to be unsuccessful in addressing the housing and mental health components of her case plan, DSCYF could move to have the next review hearing converted into a TPR hearing. On February 15, 2024, DSCYF so moved, and the Family Court granted DSCYF's request.

(10)   At the May 9, 2024 TPR hearing, the Family Court heard testimony from Mother, Mother's DSCYF treatment worker, a foster care family liaison from Children & Families First, and the Child's court-appointed special advocate. The evidence presented fairly established that Mother had a sincere desire to reunite with the Child, who was bonded to Mother. But DSCYF remained gravely concerned about Mother's inpatient hospitalizations and inconsistent outpatient mental health treatment and medication management. Moreover, Mother's housing situation remained uncertain: the three ICPC assessments requested for Mother's residence had been denied and Mother's professed plans to move to Delaware were vague. Although Mother testified that she made "enough" money to provide for the Child, she had not provided DSCYF with recent paystubs verifying her employer or income. Mother was also unable to point to a support system upon which she could rely for the Child's care if she needed to seek inpatient treatment again. Finally, the Child was flourishing in the care of her foster family, which was an adoptive resource. Following the hearing, the Family Court issued a written decision terminating Mother's parental rights in the Child on the basis of her failure to plan. This appeal followed.

(11)   On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[4]  We review legal

---

[4] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).

rulings *de novo*.[5] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[6] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[7] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[8]

(12) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[9] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[10] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition.[11] If the Family Court finds a statutory basis for termination of parental rights, the court must then determine whether, under 13 *Del. C.* § 722, severing parental rights is in the child's best interest.[12] Both of these requirements must be established by clear and convincing evidence.[13]

---

[5] *Id.* at 440.
[6] *Id.*
[7] *Id.*
[8] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[9] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[10] *Id.* at 537.
[11] 13 *Del. C.* § 1103(a)(5)(a)-(e) (listing additional conditions).
[12] *Shepherd*, 752 A.2d at 536-37.
[13] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

(13) Here, the Family Court found that DSCYF had proved, by clear and convincing evidence, that the termination of Mother's parental rights was appropriate based on her failure to plan adequately for the Child's physical needs or mental and emotional health and development[14] and that the Child had been in DSCYF custody for 794 days—well over one year.[15] The Family Court then examined the best-interests factors set out in 13 *Del. C.* § 722 and—giving significant weight to factor 3 (the relationship of the Child with those persons who reside in the household) and factor 5 (the mental and physical health of the individuals involved)—found, by clear and convincing evidence, that termination of Mother's parental rights was in the Child's best interest.

(14) Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts. We therefore conclude that Mother's appeal is wholly without merit and devoid of any arguably appealable issues. We are satisfied that Mother's counsel made a conscientious effort to examine the record and the law and properly determined that Mother could not raise a meritorious claim in this appeal.

---

[14] 13 *Del. C.* § 1103(a)(5).
[15] *Id.* § 1103(a)(5)(a).

9

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  Counsel's motion to withdraw is moot.

BY THE COURT:


*/s/ Collins J. Seitz, Jr.*
Chief Justice