IN THE SUPREME COURT OF THE STATE OF DELAWARE

ASHLEY L. MITCHELL,[1]       §
      § No. 469, 2024
        Respondent Below,       §
        Appellant,       § Court Below–Family Court
      § of the State of Delaware
        v.       §
      § File No. 23-11-6TK
DIVISION OF FAMILY       § Petition No. 23-24211
SERVICES,       §
      §
        Petitioner Below,       §
        Appellee.       §

Submitted: May 29, 2025
Decided: June 16, 2025

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## ORDER

After consideration of the no-merit brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses thereto, and the Family Court record, it appears to the Court that:

(1) By order dated September 5, 2024, the Family Court terminated the parental rights of the appellant, Ashley Mitchell ("Mother"), in her son, born in 2021 (the "Child").[2] Mother appeals.

---

[1] The Court previously assigned pseudonyms to the appellant under Supreme Court Rule 7(d).

[2] The Family Court's order also terminated the parental rights of the Child's father. We refer only to facts in the record that relate to Mother's appeal.

(2)     On appeal, Mother's counsel has filed an opening brief and a motion to withdraw under Rule 26.1(c). Counsel asserts that she has conducted a conscientious review of the record and the relevant law and has determined that Mother's appeal is wholly without merit. Counsel informed Mother of the provisions of Rule 26.1(c), provided her with a copy of counsel's motion to withdraw and the accompanying brief, and advised her that she could submit in writing any additional points that she wished for the Court to consider. Mother has submitted a narrative for the Court's consideration. The Delaware Department of Services for Children, Youth and Their Families/Division of Family Services (DSCYF) as the appellee and the Child's attorney from the Office of the Child Advocate have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3)     DSCYF began receiving reports expressing concern for the Child's welfare shortly after his birth in May 2021.  In December 2022, DSCYF opened a treatment case for Mother because of her mental health needs and history of homelessness.  In early August 2023, DSCYF made an unannounced visit to Mother's home and found Mother and the Child living in squalid conditions.  The Child was immediately removed and placed with another family under a DSCYF-approved safety plan.  After the family informed DSCYF that they could no longer care for the Child, DSCYF petitioned for emergency custody of the Child on August

30, 2023, citing Mother's failure to cooperate with DSCYF, inappropriate housing, lack of income, and untreated mental health conditions.

(4) With the filing of DSCYF's dependency-and-neglect petition, the mandated hearings ensued.[3] Mother waived the preliminary protective and adjudicatory hearings, stipulating that the Child was dependent in her care because she lacked appropriate housing. In mid-September 2023, DSCYF developed a case plan to facilitate Mother's reunification with the Child. Mother's case plan required her to: (i) undergo a psychological evaluation and follow all treatment recommendations; (ii) obtain and maintain stable employment and housing; (iii) complete a parenting class; (iv) attend anger management classes; and (v) work with a family interventionist to, among other things, establish a budget.

(5) On September 26, 2023, DSCYF moved to be excused from providing reunification services to Mother because her parental rights had been involuntarily terminated in the Child's two older siblings in West Virginia.[4] Following the October 10, 2023 disposition hearing, the Family Court granted DSCYF's motion and scheduled a review hearing for November. On October 24, 2023, DSCYF

---

[3] When a child is removed from his home by DSCYF and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. Proc. R. 212-219.

[4] 13 *Del. C.* § 1103(d) (providing that DSCYF is not required to provide reunification services when the Family Court finds, by clear and convincing evidence, that termination of the parent's rights is appropriate because the parent's parental rights in another child have been involuntarily terminated).

moved to change the permanency goal from reunification to termination of parental rights (TPR) for the purpose of adoption. On November 7, 2023, DSCYF petitioned to terminate Mother's parental rights on the basis of her prior involuntary TPRs.

(6) As of the November 29, 2023 permanency hearing, Mother had made some progress on the mental-health component of her case plan: she was attending outpatient therapy and had given DSCYF permission to access her treatment records. However, the Family Court found that Mother's ongoing erratic and volatile behavior tended to show that her current treatment plan was not sufficiently addressing her mental health needs, and Mother had neither undergone a psychological evaluation nor completed an anger management course. Some repairs and improvements had been made at the house where Mother continued to reside, but Mother was not on the lease. Moreover, DSCYF expressed concerns about Mother's plan for the Child's sleeping arrangements should the Child be returned to her care—specifically, DSCYF did not think it was appropriate for the Child (then two years old) to share a bedroom with a non-relative adult male. Following the hearing, the Family Court granted DSYCF's motion to change the permanency goal to TPR. In support of its decision, the Family Court observed that despite Mother's extensive history of receiving services in both West Virginia and Delaware, she had failed to meaningfully address DSCYF's areas of concern.

4

(7)     At the TPR hearing—held on March 26, 2024, and May 28, 2024—the Family Court heard testimony from Mother, Mother's treatment worker, the Child's permanency worker, the Child's father, the Child's court-appointed special advocate, and the Child's paternal uncle, with whom the Child had been placed.  The testimony fairly established that Mother: (i) continued to live in the same residence where she and the Child were living when the Family Court granted emergency custody of the Child to DSCYF (in large part because of the squalid living conditions), (ii) had not completed a parenting course or undergone a psychological evaluation, and (iii) made inappropriate comments to the Child during visits.  The undisputed evidence also showed that West Virginia had terminated Mother's parental rights in the Child's two older siblings in June 2020 and that the West Virginia Supreme Court of Appeals had affirmed the TPR order on appeal.  Finally, the Child, who was placed with his paternal uncle and aunt, was thriving in his placement and bonded to the family, which was an adoptive resource.  Following the hearing, the Family Court issued a written decision terminating Mother's parental rights in the Child because of Mother's prior involuntary TPRs.  This appeal followed.

(8)     On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[5]  We review legal

---

[5] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).

5

rulings *de novo*.[6] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[7] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[8] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[9]

(9) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[10] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[11] If the Family Court finds a statutory basis for termination of parental rights, the court must then determine whether, under 13 *Del. C.* § 722, severing parental rights is in the child's best interest.[12] Both of these requirements must be established by clear and convincing evidence.[13]

(10) Here, the Family Court found that DSCYF had proved, by clear and convincing evidence, that the termination of Mother's parental rights was

---

[6] *Id*. at 440.
[7] *Id*.
[8] *Id*.
[9] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[10] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[11] *Id*. at 537.
[12] *Id*. at 536-37.
[13] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

6

appropriate because of her prior involuntary TPRs.[14]  The Family Court then examined the best-interests factors set out in 13 *Del. C.* § 722 and found, by clear and convincing evidence, that termination of Mother's parental rights was in the Child's best interest.

(11)  In the narrative that Mother has submitted for the Court's consideration, she does not dispute the factual findings of the Family Court.  Rather, Mother seems to argue that DSCYF did not have a basis to seek emergency custody of the Child in August 2023.  But Mother waived this argument in the initial dependency-and-neglect proceedings when she (with the assistance of counsel) stipulated that the Child was dependent in her care because she was unable to provide the Child with appropriate and safe housing.

(12)  Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts.  We therefore conclude that Mother's appeal is wholly without merit and devoid of any arguably appealable issues.  We are satisfied that Mother's counsel made a conscientious effort to examine the record and the law and properly determined that Mother could not raise a meritorious claim in this appeal.

---

[14] 13 *Del. C.* § 1103(a)(7).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family

Court is AFFIRMED.  Counsel's motion to withdraw is moot.

BY THE COURT:


*/s/ Collins J. Seitz, Jr.*
Chief Justice